651 A.2d 866

Eugene Franklin GOLDSMITH

v.

STATE of Maryland.

No. 146, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 12, 1995.

114

Mark Colvin, Asst. Public Defender, (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

M. Jennifer Landis, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

The issue this Court must resolve in the instant case is whether Maryland Rule 4–264 or the federal and/or state constitution entitles a defendant charged with child abuse and related sexual offenses to obtain pre-trial discovery review of the victim's psychotherapy records maintained by the victim's private psychotherapist. Our answer is no.

## I.

The petitioner, Eugene Franklin Goldsmith, was charged with committing sexual child abuse, second degree rape, second and third degree sexual offense, and unnatural and perverted sexual practices on his adopted stepdaughter, whom we shall call Laura.[1] The criminal information charged that the crimes had been committed on various occasions "on or between January 1, 1978 and December 31, 1981." Laura, who

---

1. We use this pseudonym to protect the identity of the victim.

was 25 years old at the time of trial, testified that the crimes had occurred when she was between the ages of 7½ and 13 or 14. The criminal charges were not instituted until more than 10 years after the alleged commission of the last criminal act.

Aware that the complaining witness was in therapy with a psychologist, the petitioner sought access to her psychotherapy records. Psychotherapy records are privileged under Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 9–109, which codifies the privilege for communications between a patient and psychiatrist or psychologist. That privilege, which we will refer to as the "psychotherapist-patient privilege" or simply "the privilege" is:

"(b) *Privilege generally.*—Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder."

§ 9–109. There are six exclusions to the statutory privilege, none of which would be applicable to the instant case. *See* § 9–109(d)(1)–(6). Therefore, Laura has a psychotherapist-patient privilege which she is unwilling to waive and which is entitled to protection unless and until it must yield to Goldsmith's constitutionally protected rights.

Goldsmith first filed a "MOTION FOR THE ISSUANCE OF A SUBPOENA FOR PRODUCTION OF TANGIBLE EVIDENCE PRIOR TO TRIAL" pursuant to Md.Rule 4–264. In that motion, he alleged (1) that the complainant has been in treatment with Dr. Gombatz, a psychologist, for over four years, and (2) that a police detective related that it took years of counseling for the complainant to summon the courage to bring these charges against her stepfather.

The reasons given for the request were:

"The issue involved in the Defendant's demand for the complainant's psychological treatment records is one of credibility. It is important to keep in mind that, unlike the scenario in *Zaal* [*v. State*, 326 Md. 54, 602 A.2d 1247 (1992),]

where the victim was a 12 year old child, the complainant in this case is a 25 year old adult who has been in counseling for over four years. The conduct alleged in the criminal information occurred between 1978 and 1981. The Defendant would proffer that the complainant moved from his residence in the summer of 1983. According to the testimony of Detective Madison at the preliminary hearing, the alleged abuse ceased two years prior when the complainant was 15 years old. The Defendant has not seen or had contact with the complainant since 1983. In this situation, the Defendant submits that the Court must give him some latitude in obtaining information that may enable him to confront his accuser in some meaningful way."

The defendant requested that a "[s]ubpoena be issued pursuant to Md.Rule 4–264" to Michael Gombatz, Ph.D., commanding Dr. Gombatz to produce "[a]ll documents including but not limited to reports, summaries, psychological testing, interview notes, diagnosis, and correspondence, that reflect and relate in any way to your treatment and counseling of [the complainant]." The subpoena requested the documents and records be produced at the law offices of the defense counsel in Towson, Maryland. The State filed a response alleging the following:

"1. A doctor patient privilege exists which can only be waived by the patient. [The complainant] has not waived this privilege. [citing *Beckette v. State*, 31 Md. App. 85, 355 A.2d 515 (1976)].

2. These records are not subject to the Maryland Rules of Discovery.

3. To allow a victim's psychiatric records to be given to the defense violates her privacy.

4. Her psychiatric records are not relevant to the criminal charges against the defendant."

A hearing was held on the defendant's motion, and there was no proffer of any likelihood that relevant information would be obtained by reviewing the records. The proffer made by the defense counsel was as follows:

"Your Honor, I think that what's required under *Zaal*, and my understanding of it, is a nominal showing of relevance. And I think here where the issue is going to be the credibility of the Plaintiff, I would say to you that in the affidavit that Detective Madison attached to her arrest warrant of my client, she indicated that the complainant had been in counseling. And we later, at the preliminary hearing, found that it was with Dr. Gombatz for a period of over four years.

Where the facts are that you have an adult bringing charges that go back over ten years where, obviously, there's a question about the complainant's emotional state, and I think that's tied into the credibility. I mean, I simply don't know what her emotional state is. I think this in a way goes back to the fact that there have been no—you know, the complainant's mother hasn't been interviewed. We don't know—other than Detective Madison said today, something about the mother being emotionally unstable. I mean, that's news to me. But I mean, I think it's a fact that needs to be looked into.

But in terms of confrontation rights, it seems to me that the Defendant, in all the facts of this case, being charged with conduct that happened over a decade ago, where you know that the Defendant has been in counsel—not the Defendant, the complainant has been in counseling for over four years. I think that the—I think where credibility is the make or break issue, I think that some relief under *Zaal* whether that means that the court review these records in camera or preferable to the Defendant, would be that I, under some sort of monitored format, be allowed to look at these records."

The substance of the defense counsel's proffer was that the incidents at issue occurred over 10 years prior to trial, that the victim was in counseling, and the defense counsel complained "I simply don't know what her emotional state is." The defendant's motion for issuance of a discovery subpoena to produce records at defense counsel's law office was denied by written order dated September 1, 1992.

It is quite clear that the motions judge precluded the *pretrial* discovery review of Dr. Gombatz's records. The defense was not precluded from calling Dr. Gombatz when the case actually went to trial. The defendant requested and was issued a subpoena pursuant to Md.Rule 4–265 for Dr. Gombatz to appear and produce his records at trial. The motions judge did not need to determine whether the defendant might be able to elicit exculpatory evidence from the psychotherapist at trial. Thus, the court did not hold that Laura's privilege outweighed the defendant's constitutional *trial* rights. As defense counsel made clear on the first day of trial:

> "[DEFENSE COUNSEL:] The state has filed two motions to quash my subpoena, my trial subpoena *duces tecum.* One was to a psychologist named Dr. Gombatz. I think that we've resolved ... through discussions with the state I think we have resolved Dr. Gombatz's situation ...
>
> COURT: Okay.
>
> [DEFENSE COUNSEL:] ... which is that he's under subpoena. We've put him on call. If it becomes appropriate during the course of the trial that I could call him. He's under subpoena."

Although Dr. Gombatz was placed on call at trial by agreement of the parties, he was never called to testify.

At trial, Laura testified that the petitioner sexually abused her for approximately 5½ years, up until she was about 14 years old. She said that the sexual activity, which included fondling, fellatio, cunnilingus, and on one occasion, attempted sexual intercourse, occurred on a regular basis, "more than twice a week." Laura testified that her mother moved out of the family home when she was 15. She did not tell her mother that Goldsmith had sexually abused her because she felt that her mother would neither have cared nor done anything about it.

When she was 17 and graduated high school, Laura moved from Goldsmith's home. She testified that at that time she reported the sexual abuse to the Department of Social Ser-

vices. That agency's report, which was introduced in evidence, reveals the following:

> "[Laura] informed Mrs. Purdon that her father had 'thrown her out' after she graduated from high school. She mentioned that her father had sexually abused her when she was 9 years old to 12 years old. . . . She had an appointment to discuss this with Protective Services, but did not appear. Numerous attempts were made to contact her, however, she did not return any messages.
>
> This case was not investigated further as the allegations were vague and the 'victim' apparently did not wish to discuss the matter with Protective Services or the police. There is insufficient information to pursue this case and no finding is possible. The 181 is completed for statistical purposes only."

Laura testified that before going to the Department of Social Services, she also told her boyfriend about being sexually abused.

A diary kept by Laura in 1979, 1980 and 1981, was introduced into evidence by the defendant. The entries contain no hint of any sexual activity or impropriety between the defendant and the complaining witness. An entry in 1981 does discuss sexual activity between the complaining witness and a boyfriend, and states that "I'm glad he was my first." Responding to questions about this entry, Laura explained that she did not write about sexual activity with Goldsmith because she shared the books with her friends, allowing them to look at the diary and occasionally even write in it with her. Additionally, she explained that she "wanted to block all of those things from my memory and that's why I talked about it like it was my first time. It was my first time with a boyfriend . . . a real boyfriend, somebody who was legitimate to have a sexual relationship with."

Goldsmith denied sexually abusing his stepdaughter. He testified that he first heard about the allegations approximately five years before trial, when a custody battle with his former wife over his son seemed imminent. He explained that

his former wife told him that Laura had come forward and said she had been molested by him, his brother, his father, and his uncle. Based on that conversation, and at the suggestion of a lawyer friend, he looked through his stepdaughter's old papers, found her diary, and photocopied the diary.

Although the jury acquitted him of second degree rape, Goldsmith was found guilty of sexual child abuse, second and third degree sexual offense, and unnatural and perverted sexual practices. He was sentenced to 12 years imprisonment, 6 of which were suspended and, upon his release, placed on 5 years probation, conditioned upon payment of restitution, performing community service and undergoing psychiatric counseling. Goldsmith appealed to the Court of Special Appeals which, in an unreported opinion, vacated the restitution order, but affirmed the remainder of the judgment. We granted certiorari.

## II.

In the instant case, we are called upon to strike a balance between the competing interests of a witness's privilege and a defendant's federal and state constitutional rights to obtain and present evidence necessary to the defense. In weighing these compelling interests, we must keep in mind that an accused has limited pre-trial discovery rights, which may not outweigh a witness's privilege, whereas the accused's right to obtain and present exculpatory evidence at trial is entitled to far greater constitutional protection.

At common law, a criminal defendant had no right to pre-trial discovery. *See State v. Haas*, 188 Md. 63, 69, 51 A.2d 647, 650 (1947), *overruled on other grounds, In re Petition for Writ of Prohibition*, 312 Md. 280, 305, 539 A.2d 664, 676 (1988); *see also* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 20.1, at 836 (2d ed. 1992) ("American courts, relying on the English precedent, adopted a common law rule holding that the judiciary lacked any inherent authority to order pre-trial discovery in criminal cases."). Over time, we have expanded the common law and given the trial courts

some authority to either require or permit discovery. *See Kardy v. Shook, J.,* 237 Md. 524, 537, 207 A.2d 83, 90 (1965). Nevertheless, the right to pre-trial discovery is strictly limited to that which is permitted by statute or court rule or mandated by constitutional guarantees. *See* 2 Charles E. Torcia, *Wharton's Criminal Procedure* § 334, at 547 (13th ed. 1990) (noting that "[a]bsent a statute providing otherwise, the defendant is not entitled, as a matter of right, to the discovery or inspection of evidence in the possession of the prosecution").[2] *See also* LaFave & Israel, *Criminal Procedure* § 20.2, at 843. We therefore must look to our statutes, court rules, and constitutional requirements to determine the propriety of the present defendant's right to pre-trial discovery.

## PRE–TRIAL DISCOVERY UNDER MARYLAND RULE 4–264

Pre-trial production of "documents" or "other tangible things" under Md.Rule 4–264 is discretionary, requiring a motion and a court order. As such, it does not guarantee a criminal defendant the absolute right to subpoena and examine the private records of every private individual or entity that may conceivably possess exculpatory records. The rule does not mandate that a defendant have unfettered access to all prior statements of a witness in the form of notes taken by third parties. A judge is given discretion whether to order a subpoena under the rule. Furthermore, Md.Rule 4–264 specifically excludes the discovery of privileged information that is at issue in the present case. The rule states:

> "On motion of a party, the circuit court may order the issuance of a subpoena commanding a person to produce for inspection and copying at a specified time and place before trial designated documents, recordings, photographs, or other tangible things, *not privileged,* which may constitute or

---

2. If a defendant has no right absent a statute or court rule to obtain information in the possession of the prosecution, it follows that he certainly has no such right to discovery of information held by a third party.

contain evidence relevant to the action. Any response to the motion shall be filed within five days." (Emphasis added).

Thus, nothing in Md.Rule 4–264 permits the discovery of Laura's privileged psychotherapist records.

Our recent decision in *Zaal v. State*, 326 Md. 54, 602 A.2d 1247 (1992) also does not provide Goldsmith with a right to pre-trial discovery in the instant case. In *Zaal*, we were asked to determine a defendant's pre-trial right to subpoena the school records of his accuser. In reversing a denial of this subpoena, we noted that the alleged victim's school records were confidential but not privileged. *Zaal*, 326 Md. at 76, 602 A.2d at 1258. We found that "the Maryland regulations do not provide, nor even indicate, that a student's education records are not discoverable pursuant to the Maryland Rules." *Id.* In contrast, in the present case, psychotherapist records are privileged under § 9–109 and Md.Rule 4–264 specifically precludes such privileged records from pre-trial discovery. Our decision in *Zaal* did not pertain to or authorize pre-trial discovery of privileged records. Thus, we hold that Md.Rule 4–264 means what it says and precludes pre-trial discovery of a victim's privileged psychotherapist-patient records. We now consider whether Goldsmith has any constitutional right to the pre-trial discovery he seeks.

## CONSTITUTIONAL RIGHT TO PRE-TRIAL DISCOVERY

■ The Supreme Court has not recognized a constitutional right to pre-trial discovery. In *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the Court said:

"There is no general constitutional right to discovery in a criminal case, and *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . .' *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973)."

*Weatherford,* 429 U.S. at 559, 97 S.Ct. at 845–46, 51 L.Ed.2d at 42.

In *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the Supreme Court dealt with the issue of a criminal defendant's pre-trial access to confidential state agency records. The defendant was charged with criminal sexual assault on his daughter. He sought access to the records of the Pennsylvania Children and Youth Services (CYS), which was the state agency charged with investigating child abuse. A statute made the records confidential, but provided CYS may disclose reports pursuant to a court order. The trial court did a partial *in camera* review of the records and refused to order disclosure. The Pennsylvania Supreme Court reversed and concluded that defense counsel was entitled to review the entire file for useful evidence. The Supreme Court reversed in part and affirmed in part the judgment of the Pennsylvania Supreme Court. *Ritchie,* 480 U.S. at 61, 107 S.Ct. at 1003, 94 L.Ed.2d at 60. A majority of the United States Supreme Court held that the defendant did not have a right to full access to the records and *in camera* examination by the trial judge could satisfy any federal constitutional rights the defendant may have to obtain exculpatory information from the agency's records. *Id.* A significant difference between *Pennsylvania v. Ritchie* and the instant case is that the records in *Ritchie* were those of a government agency. The holding in *Ritchie* was based at least in part on due process and the prosecution's obligation to turn over evidence in its possession which is favorable to the accused and material to guilt. *Ritchie,* 480 U.S. at 57–58, 107 S.Ct. at 1001–02, 94 L.Ed.2d at 57–58. The Court also stated: "We express no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to *anyone,* including law-enforcement and judicial personnel." 480 U.S. at 57 n. 14, 107 S.Ct. at 1001 n. 14, 94 L.Ed.2d at 57 n. 14. Another difference in *Ritchie* was that the Pennsylvania statute making the CYS records confidential created only a qualified privilege similar to the qualified privilege created for the school records in *Zaal.* Addi-

tionally, the statutes in *Ritchie* and *Zaal* permitted disclosure pursuant to a court order. The Supreme Court noted: "This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes.... Given that the Pennsylvania Legislature contemplated *some* use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions." 480 U.S. at 57–58, 107 S.Ct. at 1001, 94 L.Ed.2d at 57–58 (emphasis in original).

In *Zaal,* this Court discussed the Supreme Court holding in *Ritchie.* We recognized that the Supreme Court "rejected defendant's confrontation clause argument, reasoning that it is a trial right, not one applicable to discovery." *Zaal,* 326 Md. at 67 n. 6, 602 A.2d at 1253 n. 6 (citing *Ritchie,* 480 U.S. at 52, 107 S.Ct. at 999, 94 L.Ed.2d at 54). We adopted the Supreme Court's due process analysis and recognized that in *Zaal,* as well as in *Ritchie,* there may be a denial of due process when the *government's* records containing potentially exculpatory information were withheld from an accused. We stated in *Zaal* that the "issue in the case *sub judice,* as was also the case in *Ritchie,* is a file required to be kept by a State agency...." 326 Md. at 80, 602 A.2d at 1260.

In *Avery v. State,* 15 Md.App. 520, 292 A.2d 728 (1972), *appeal dismissed,* 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973), the Court of Special Appeals upheld a trial court's denial of defendant's motion to compel production of psychiatric records of a victim where the victim claimed the records were privileged. The court held the psychiatrist was not a State agent and stated: "Where, as here, the witness claimed the privilege, no suppression of evidence by the State is involved within the contemplation of such cases as *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 [ (1963) ] or *Giles v. Maryland,* 386 U.S. 66[, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) ]." *Avery,* 15 Md.App. at 537, 292 A.2d at 741.

As in *Avery,* the psychotherapist-patient privileged records at issue in the instant case were not kept by a state agency or required to be kept by a state agency. Therefore

no disclosure is required under *Brady*.[3] Thus, not only does Md.Rule 4–264 prohibit discovery of the privileged records requested by Goldsmith, but nothing in *Ritchie, Zaal,* or *Avery* would constitutionally require the pre-trial discovery sought by Goldsmith of a private psychotherapist's records which are "shielded from all eyes," state or defense.

Finally, numerous decisions of this Court have held that in a criminal case neither the State nor the defendant have unlimited pre-trial discovery rights. Those decisions have also made it clear that a criminal defendant has no right to pretrial discovery by deposition or other forms of pre-trial discovery for information possessed by third parties.

In *Evans v. State*, 304 Md. 487, 499 A.2d 1261 (1985), a death penalty case, Judge Eldridge, writing for the Court, pointed out that it is "clear that the defendant had no right to insist upon a pretrial deposition or pretrial interrogation of [the witness] and that the trial judge did not err in quashing the subpoena that would have required [the witness] to attend the pretrial hearing." 304 Md. at 509, 499 A.2d at 1272. Similarly, in *Kardy, supra,* this Court held that a criminal defendant has neither a state nor federal constitutional right to take the deposition of a potential witness. We also stated:

"The defendant and his counsel are at perfect liberty, as they always have been in this State, to interview and interrogate any prospective witness, subject, of course, to

---

**3.** We further note that pre-trial discovery of Laura's records is not provided for under the Jencks Act, 18 U.S.C. § 3500 (1982), which requires that after a witness testifies, prior statements in the state's possession must be disclosed to the defense. The Jencks Act constitutes a trial right rather than a discovery right. It requires that a witness testify before his or her statements are disclosed. *See Collins v. State,* 318 Md. 269, 568 A.2d 1, *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990); *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979). Further, only those statements in the hands of the state are discoverable. *See Bruce v. State,* 318 Md. 706, 725–26, 569 A.2d 1254, 1264 (1990). In the instant case, Goldsmith was denied a pre-trial subpoena for psychotherapist records. He was not denied a trial subpoena for Dr. Gombatz, the psychotherapist. Additionally, the psychotherapist records in the instant case were not in the hands of the state.

the witness' acquiescence in such interrogations. And the defendant and his counsel may take an affidavit from any prospective witness, *if the witness be willing.* But these matters are entirely different from forcing and requiring a witness to make a pre-trial deposition." (Emphasis added). 237 Md. at 541, 207 A.2d at 92–93.[4]

Neither due process, compulsory process nor the right to confront adverse witnesses establishes a pre-trial right of a defendant to discovery review of a potential witness's privileged psychotherapy records. Thus, we find no common law, court rule, statutory or constitutional requirement that a defendant be permitted pre-trial discovery of privileged records held by a third party.

## PRIMA FACIE SHOWING REQUIRED FOR PRE-TRIAL DISCOVERY OF NON-PRIVILEGED RECORDS

■ Even if the records in the instant case were not privileged, but were merely confidential, we would nonetheless hold that the motions judge did not abuse his discretion in declining to issue the pre-trial subpoena and declining an *in camera* review of those records.

In a very recent case, *Harris v. State,* 331 Md. 137, 626 A.2d 946 (1993), Judge Bell, writing for the Court, stated:

"To be sure, a party to ongoing litigation may subpoena, without advance notification having to be given to the other party, a third party's records for use at the trial. When, however, the records sought are 'confidential,' before disclosure will be ordered, the moving party must show, usually at a hearing, some connection between the records sought,

---

4. We note that most jurisdictions have held that a criminal defendant is not entitled to take discovery depositions of potential witnesses. Denial of such depositions has been held not to violate a defendant's constitutional rights to due process, compulsory process for obtaining witnesses, equal protection, or confrontation. *See* Annotation, Romualdo P. Eclavea, *Accused's Right to Depose Prospective Witnesses Before Trial in State Court,* 2 A.L.R.4th 704 (1980).

the issue before the court, and the *likelihood* that information relevant to the trial would be discovered. *Zaal v. State,* 326 Md. 54, 83, 602 A.2d 1247, 1261 (1992)." (Emphasis added).

*Harris,* 331 Md. at 161, 626 A.2d at 958. In *Zaal,* we also recognized that "[t]o overcome a privacy interest in ... records, some relationship must be shown between the charges, the information sought, and the likelihood that relevant information will be obtained as a result of reviewing the records." 326 Md. at 81–82, 602 A.2d at 1261. Thus, to obtain pre-trial discovery of confidential records, *Zaal* and *Harris* require the defendant to show a likelihood of obtaining relevant information.

*Zaal* and *Harris* both establish that with confidential records, it is the defendant who bears the burden of establishing the need for pre-trial disclosure. *See Zaal,* 326 Md. at 83, 602 A.2d at 1261; *Harris,* 331 Md. at 161, 626 A.2d at 958. In the instant case, Goldsmith did not establish a need for the records. Goldsmith asserted only that Laura's credibility would be an issue at trial. He did not establish that discovery of the records would likely lead to relevant information. Rather, he sought "some latitude in obtaining information that may enable him to confront his accuser in some meaningful way." There was *no* showing of any likelihood of obtaining information relevant to the defense in the records.[5] In addition, there clearly was no repressed memory syndrome in the instant case. The records of the Department of Social Services establish that the victim had reported the sexual abuse

---

5. In his dissent, Judge Bell asserts that Goldsmith's proffer of relevance was sufficient under *Zaal v. State,* 326 Md. 54, 602 A.2d 1247 (1992) and *Department of Social Services v. Stein,* 328 Md. 1, 612 A.2d 880 (1992), in part because he established that "the psychologist's records might show that the victim was delusional." After the State contended that the victim was "entitled to her privacy," defense counsel remarked "[s]uppose she's delusional, Your Honor" to which the State replied: "Oh, suppose anything. This is all fishing in the dark," and defense counsel responded: "Well, that's right." Nowhere is there the remotest suggestion from anyone that the victim was in fact delusional. Merely stating *"suppose"* the victim did this or said that is not a proffer sufficient to establish a need for the records.

to that Department years before she went into counseling. Even before she went to the Department of Social Services, she confided to her boyfriend about her stepfather's sexual abuse. The only thing her therapy did was give her the courage to renew the charges she made years before to the Department of Social Services. Goldsmith did not meet his burden to establish "the likelihood that relevant information will be obtained as a result of reviewing the records." *Zaal,* 326 Md. at 82, 602 A.2d at 1261. Thus, even had the requested records not been privileged, the motions judge did not abuse his discretion in determining not to issue the requested pre-trial discovery subpoena.

## DISCLOSURE OF PRIVILEGED RECORDS AT TRIAL

██ Although we found no constitutional right to pre-trial discovery of the records at issue in the present case, we wish to distinguish between a defendant's right of access to information during pre-trial discovery as opposed to the defendant's constitutionally based right *at trial* to fairly present a defense. In holding that a defendant has no right to pre-trial discovery of privileged records held by a third party, we recognize that the defendant's constitutional rights at trial may outweigh the victim's right to assert a privilege. We note that the Supreme Court has found that there are circumstances where, at trial, the right to claim a privilege must yield to a defendant's constitutional rights to confrontation and compulsory process. *See Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347, 355 (1974) (holding that "the right of confrontation is paramount to the State's policy of protecting a juvenile offender"); *see also Com. v. Two Juveniles,* 397 Mass. 261, 491 N.E.2d 234, 238 (1986) (considering the need for disclosure of communications to sexual assault counselor and noting that "in certain circumstances the absolute privilege ..., must yield at trial to the

constitutional right of a criminal defendant to have access to privileged communications").[6]

In the instant case, Goldsmith was denied a *pre-trial* discovery subpoena for records under Md.Rule 4–264, the issuance of which would have abrogated the psychotherapist-patient privilege in order to secure pre-trial *discovery* leads. Goldsmith was issued, not denied, a *trial* subpoena *duces tecum* pursuant to Md.Rule 4–265 for Dr. Gombatz and his records. We note that Md.Rule 4–265, like Md.Rule 4–264, precludes the use of a subpoena to obtain privileged records. However, as distinguished from our analysis of the defendant's right to pre-trial discovery information, the defendant's constitutional rights to a fair trial may outweigh the right of the victim to assert a privilege at the trial stage. Therefore, although we hold that the psychotherapist-patient privilege protects a doctor from having to furnish information for pre-trial discovery review, the privilege may not always protect a doctor from furnishing exculpatory evidence at trial pursuant to a trial subpoena or subpoena *duces tecum* under Md.Rule 4–265.[7]

There are reasons for not permitting *pre-trial* discovery of privileged information, but permitting, on proper showing, trial production of privileged exculpatory evidence. As one court recognized with regard to pre-trial discovery of privileged information:

---

6. For a discussion of the difficulties of balancing testimonial privileges against the defendant's constitutional rights at trial, see Robert Weisberg, *Defendant v. Witness: Measuring Confrontation and Compulsory Process Rights Against Statutory Communications Privileges*, 30 Stan. L.Rev. 935 (1978).

7. There is another analogous area where this Court has held that there is no right to pre-trial discovery of records, but if a trial subpoena is issued, then upon a proper showing there may be a right to an *in camera* review of the records. For example, in *Martinez v. State*, 309 Md. 124, 140, 522 A.2d 950, 960 (1987) and *Jones v. State*, 297 Md. 7, 14–15, 464 A.2d 977, 982 (1983), we noted that a defendant may not be entitled to pre-trial disclosure of a witness's grand jury testimony, but the defendant may be entitled to the witness's grand jury testimony for cross-examination purposes after the witness testifies at trial or at a suppression hearing.

"[W]e note the prematurity of this issue. At this time, we do not know whether the victim will testify, nor to what she would testify at the time of trial. Any decision on the merits of the issue at this time would, of necessity, be speculative."

*People v. Dist. Court, City & Cty. of Denver,* 719 P.2d 722, 726 n. 2 (Colo.1986). After the victim testifies on direct examination, the trial judge will be in a better position to evaluate what is exculpatory evidence and what is irrelevant. The balancing of the defendant's need for exculpatory information against the need to protect the victim's psychotherapist-patient privilege will be a much more informed decision at trial.

In addition, a subpoena for tangible evidence before trial under Md.Rule 4–264 is *only* for documents or other tangible evidence; it is not a subpoena for witnesses and it does not permit examination of witnesses. Thus, if we were to permit pre-trial *in camera* review in the instant case, assuming the victim had hourly psychotherapy once a week for four years and that Dr. Gombatz kept detailed notes of those sessions, the trial judge would have to review *in camera* the notes of approximately 200 hours of therapy sessions. In contrast, a trial subpoena *duces tecum* under Md.Rule 4–265 covers the witness as well as documents or tangible evidence. Therefore, when conducting an *in camera* review under Md.Rule 4–265, the trial judge may be able to enlist the psychotherapist's assistance in locating relevant portions of the notes, as well as interpreting the notes. Thus, an *in camera* examination of the witness and the records summonsed at trial under Md. Rule 4–265 is far more efficient than an *in camera* review of the records alone subpoenaed pre-trial under Md.Rule 4–264. Furthermore, a trial subpoena is used to secure specific relevant information in a case that is actually going to trial. In considering whether to quash a trial subpoena or to conduct an *in camera* examination pursuant to a trial subpoena, the trial judge will know that the case is going to trial and that the privileged material will actually be needed for a trial defense. In addition, the trial judge will be in a better position to

determine what the contested issues are and evaluate the relevancy of the information the defense is seeking.

It is conceivable that a trial subpoena under Md.Rule 4–265 for a witness and documents, which may be privileged, could be reviewed pre-trial on a motion to quash or a motion for a protective order. Even if we assume the motions judge was ruling on a motion to quash a trial subpoena for exculpatory evidence, there was no error in denying disclosure with or without *in camera* review because Goldsmith did not satisfy the strong burden of proof needed to establish the necessity for the privileged information sought. In *Zaal*, we required a showing of the "likelihood that relevant information will be obtained as a result of reviewing the records" in order to obtain pre-trial disclosure of merely confidential records. 326 Md. at 82, 602 A.2d at 1261. Because of the privileged nature of the records involved in the present case, the burden of proof required of the defendant to establish a need for disclosure may be higher than that required in *Zaal*. In *Two Juveniles, supra*, the Supreme Judicial Court of Massachusetts assessed the required showing for a defendant to override a statutory absolute privilege for juvenile records. The court recognized that "[i]n general, an assertion that inspection of information is needed only for a possible attack on credibility has been rejected because, if upheld, such a broad right of discovery would substantially destroy the privilege." *Two Juveniles*, 491 N.E.2d at 239. In *Com. v. Clancy*, 402 Mass. 664, 524 N.E.2d 395 (1988), the Supreme Judicial Court of Massachusetts further clarified:

> "the individual seeking to override the privilege of another bears the burden of establishing a legitimate need for the privileged information sought. [*Two Juveniles*, 397 Mass. 261,] 269, 491 N.E.2d 234. *Cf. United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 [ (1982) ] (defendant must make some plausible showing of how the testimony of witnesses claimed to be necessary under the compulsory process guarantee of the Sixth Amendment would have been both material and favorable to defense). We also warned that this burden would not be

met simply by a showing that the information was likely to be relevant, material, or unavailable from other sources. [*Two Juveniles,*] 397 Mass. at 269, 491 N.E.2d 234. *See State v. Agurs,* 427 U.S. 97, 109–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) (mere possibility that undisclosed information might aid defense does not establish materiality)." 524 N.E.2d at 398.

■ As we previously indicated, there was an insufficient showing by Goldsmith of the likelihood that the records contained exculpatory information. The mere assertion that the records in question *may* contain evidence useful for impeachment is insufficient to override an absolute statutory privilege, even at the trial stage. We agree with the Supreme Court of Michigan that in assessing a defendant's right to privileged records, the required showing must be more than the fact that the records "may contain evidence useful for impeachment on cross-examination. This need might exist in every case involving an accusation of criminal sexual conduct." *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557, 576 (1994) (footnotes omitted). We cannot permit a privilege to be abrogated even at the trial stage by the mere assertion that privileged records *may* contain information relevant to credibility. To do so would virtually destroy the psychotherapist-patient privilege of crime victims. It has long been recognized that privileges, by their very nature, restrict access to information which would otherwise be disclosed. *See* 1 *McCormick on Evidence* § 72, at 269 (John W. Strong ed., 4th ed. 1992). The rationale for this restriction has been our recognition of the social importance of protecting the privacy encompassed by specified relationships. Such privacy interests cannot be negated by the mere assertion of the possibility of impeachment evidence. A defendant's constitutional rights to a fair trial simply do not stretch that far.

■ We therefore hold that in order to abrogate a privilege such as to require disclosure at trial of privileged records, a defendant must establish a reasonable likelihood that the privileged records contain exculpatory information necessary

**134**

for a proper defense.[8]   In the present case, the defendant did not establish the likelihood that the records sought would provide exculpatory information.[9]   At most, Goldsmith made

---

8.   We note that Connecticut, Nebraska, and Michigan courts have held that, once a defendant satisfies this burden of establishing the need for the privileged materials, the witness claiming the privilege must waive the privilege to permit *in camera* review of the privileged records. Failure to waive the privilege to permit *in camera* review results in the witness's testimony being stricken.   *See People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 577 (1994); *State v. Whitaker*, 202 Conn. 259, 520 A.2d 1018, 1025 (1987); *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197, 201 (1989).

9.   In *Com. v. Bishop*, 416 Mass. 169, 617 N.E.2d 990 (1993), the Supreme Judicial Court of Massachusetts recommended a five-stage procedure for balancing a witness's right to claim a privilege against the defendant's constitutional trial rights in rape or sexual abuse cases. 1) When a defendant moves to compel production of records and the witness claims a privilege, the judge must determine whether the records are in fact privileged and provide an explanation of his or her findings. *Bishop*, 617 N.E.2d at 997.   2) If the records are found to be privileged, defense counsel must submit in writing to the judge "the theory or theories under which the particular records sought are likely to be relevant to an issue in the case." *Id.*   The judge should deny the request if "the judge decides that the records are not likely to be relevant or that the defendant's request is supported only by a desire to embark on 'an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness.'" *Bishop*, 617 N.E.2d at 997–98 (citation omitted).   If the judge accepts the defendant's proffer, the judge must review the records *in camera*, designating which portions of the records are relevant or irrelevant. *Bishop*, 617 N.E.2d at 998.   (*Cf.* footnote 8).   3) The judge must then provide access to the defense and prosecution as officers of the court to relevant portions of the records "for the sole purpose of determining whether disclosure of the relevant communications to the trier of fact is required to provide the defendant a fair trial." *Id.*   4) The defendant has the burden to establish that disclosure of the relevant portions of the privileged information sought is necessary to provide the defendant with a fair trial.   Only if the defendant meets this burden shall the judge allow such disclosure.   In making this determination, the judge should identify all information not disclosed and "shall base his or her decision on written motions by the parties and an in camera hearing as the judge deems necessary." *Id.* 5) Finally, "the judge shall determine the admissibility of the records that counsel may wish to introduce in a voir dire examination.   In considering the admissibility of the records the judge shall be mindful of the requirements of the rape shield statute [Mass.Gen.L. ch. 233, § 21B (1992)]." *Id.*   The court noted that the duty of the court to disclose material information is ongoing, and the court should disclose

only a speculative assertion that the records might be relevant for impeachment. He had no right to pre-trial discovery review of the privileged records and he failed to establish the requisite need to warrant a judge ordering disclosure of the privileged information at trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

BELL, Judge, dissenting.

Distinguishing between pretrial discovery of privileged records and at trial disclosure of such records, ostensibly recognizing the latter as protected by the defendant's constitutional right to present a defense, *see* Majority Op. at 130, the majority holds that "no common law, court rule, statutory or constitutional requirement [provides] that a defendant be permitted pre-trial discovery of privileged records held by a third party." Majority Op. at 127. This holding impermissibly resolves an issue not decided by the courts below or presented by our grant of certiorari, *Clark v. State,* 306 Md. 483, 510 A.2d 243 (1986), *cert. denied,* 479 U.S. 1084, 107 S.Ct. 1286, 94 L.Ed.2d 144 (1987); *see Clark v. Elza,* 286 Md. 208, 406 A.2d 922 (1979); *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977); *Williams v. New York Life Ins. Co.,* 122 Md. 141, 89 A. 97 (1913); *Stansbury v. Keady,* 29 Md. 361 (1868); *see also* Maryland Rule 8–131(b).[1] The majority also misreads, if not disregards, this Court's holding in *Zaal v. State,* 326 Md. 54,

---

information initially withheld should it later become material. *Id.* (citing *Pennsylvania v. Ritchie,* 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40, 59 (1987)).

**1.** I do recognize, however, because it uses the term, "ordinarily", that this Court has interpreted Maryland Rule 8–131(b) as occasionally permitting the decision of cases upon issues not previously raised. *See Crown Oil & Wax Co. v. Glen Constr. Co.,* 320 Md. 546, 578 A.2d 1184 (1990); *Yarema v. Exxon Corp.,* 305 Md. 219, 503 A.2d 239 (1986); *Taub v. State,* 296 Md. 439, 463 A.2d 819 (1983). The majority does not purport to exercise its discretion in that regard; rather, it proceeds as if the issue it chooses to base its decision upon was raised and decided throughout the litigation.

602 A.2d 1247 (1992), and premises its holding on a distinction without a difference. Consequently, I dissent.

## I.

According to the majority,

> The issue this Court must resolve in the instant case is whether Maryland Rule 4–264 or the federal and/or state constitution entitles a defendant charged with child abuse and related sexual offenses to obtain pre-trial discovery review of the victim's psychotherapy records maintained by the victim's private psychotherapist.

Majority Op. at 115. This formulation of the issue apparently is based on the facts that the motions court's ruling was on the petitioner's "motion for the issuance of a subpoena for production of tangible evidence prior to trial" and that, subsequent to that ruling, the petitioner "requested and was issued a subpoena pursuant to Maryland Rule 4–265 for Dr. Gombatz to appear and produce his records at trial." *Id.* at 119. Resolving the issue as formulated, the majority concludes:

> It is quite clear that the motions judge precluded the *pre-trial* discovery review of Dr. Gombatz's records. The defense was not precluded from calling Dr. Gombatz when the case actually went to trial.... The motions judge did not need to determine whether, the defendant might be able to elicit exculpatory evidence from the psychotherapist at trial. Thus, the court did not hold that Laura's privilege outweighed the defendant's constitutional *trial* rights.

*Id.*

The majority has set up a highly vulnerable straw person, which it has proceeded easily to knock down. While, among its reasons for asking that the petitioner's subpoena for the psychotherapist's records be quashed, the State argued that the records are not subject to the Maryland Rules of Discovery, it did not make the argument, on the basis of which the majority affirms the trial court. In the trial court, neither party drew the distinction between a Rule 2–264 subpoena and a Rule 2–265 subpoena. Indeed, the only support the majority

offers for the distinction and its conclusion that the trial court's ruling was based on that distinction is the colloquy in which the petitioner's counsel acknowledged reaching an agreement with the State in response to the State's motion to quash his "trial subpoena duces tecum." The petitioner's counsel did not, in that colloquy, concede the distinction the majority draws, he merely indicated that Dr. Gombatz would be called "[i]f it becomes appropriate during the course of the trial that I could call him."

Nor was the distinction the basis for the motions court's ruling. This is understandable because that was not the focus of the argument in the Circuit Court for Anne Arundel County. Certainly the majority does not direct our attention to anything in the record which would indicate that it was because the motion was a pretrial discovery motion, rather than an at trial subpoena duces tecum, that prompted the court's ruling. The record, in fact, belies the majority's conclusion in that regard. Having subpoenaed "[a]ll documents including but not limited to reports, summaries, psychological testing, interview notes, diagnosis, and correspondence, that reflect and relate in anyway to [Dr. Gombatz's] treatment of [the complainant]," the petitioner argued that access to these records, either directly through his counsel or by *in-camera* review by the court was necessary effectively to confront the complaining witness and defend himself against her accusations. It was in this context that the petitioner proffered:

Your Honor, I think that what's required under *Zaal,* and my understanding of it, is a nominal showing of relevance. And I think here where the issue is going to be the credibility of the plaintiff, I would say to you that in the affidavit that Detective Madison attached to her arrest warrant of my client, she indicated that the complainant had been in counseling. And we later, at the preliminary hearing, found that it was with Dr. Gombatz for a period of over four years.

Where the facts are that you have an adult bringing charges that go back over ten years, where there's obvious-

ly, there's a question about the complainant's emotional state, and I think that's tied into the credibility. I mean, I simply don't know what her emotional state is. I think this in a way goes back to the fact that there have been no—you know, the complainant's mother hasn't been interviewed. We don't know—other than what Detective Madison said today, something about the mother being emotionally unstable. I mean, that's news to me. But I mean, I think it's a fact that needs to be looked into.

But in terms of confrontation rights, it seems to me that the Defendant, in all the facts of this case, being charged with conduct that happened over a decade ago, where you know that the Defendant has been in counsel—not the Defendant, the complainant has been in counseling for over four years. I think that the—I think where credibility is the make or break issue, I think some relief under *Zaal* whether that means that the court review these records *in-camera* or preferable to the Defendant, would be that I, under some sort of monitored format, be allowed to look at these records.

Significantly, the petitioner's counsel referred to the *Zaal* case as well as the petitioner's confrontation rights.

The motions court responded in a consistent fashion when ruling on the motion. Rather than focus on the distinction between a pretrial discovery right and at trial disclosure, the court distinguished between a witness' ability to perceive and a witness' veracity, reasoning that review of the privileged records hinged upon the former, rather than the latter:

The Court: Due process will set aside the privilege—will require the privilege of patient-doctor to be set aside if it's a question of perception, if it's a question of credibility in the sense of a person being able to perceive things. But on your issue such as what you started to say was, "Oh, well suppose she had never told the doctor about this before," that has nothing to do with perception. That might have to do with—* * * [i]t might have to do with her credibility or honesty, yes. But you're not going to get—due process will not allow—will not require the privilege to be set aside for

that purpose * * * If it's a capacity issue, you get it. If it's not capacity, you don't. Capacity to perceive.

The Court of Special Appeals affirmed the judgment of the circuit court. Rather than affirm on the pretrial/at trial dichotomy upon which the majority relies, it did so on the alternative bases that the trial court was without power "to override the victim's refusal to waive the patient/psychologist privilege" and that "the trial court's decision not to do so [in this case] was a proper exercise of discretion." Slip Op. at 9. It was to gain review of those two issues that the petitioner sought, and we granted, certiorari.[2]

*Zaal* is particularly relevant to the issues this case *actually* presents: Whether the psychologist/patient privilege is absolute—remains inviolate even in the face of a defendant's legitimate and reasonable need to discover arguably useful information protected by the privilege—and whether the procedure we enunciated in that case strikes a proper balance between a victim's privacy interests in confidential records and the due process discovery rights of a defendant.[3] *Zaal* in-

---

**2.** The questions presented in the *cert. petition* were:
  1. Did the trial court err in refusing either to permit defense counsel to inspect the records of the complainant's treating psychologist or to conduct an *in camera* review of the record itself?
  2. Did the trial court err in instructing the jury in response to the jury's question asking if an ex-wife can testify against her former husband?

We granted *certiorari* to consider only the first question.

**3.** The majority "hold[s] that Maryland Rule 4–264 means what it says and precludes pre-trial discovery of a victim's privileged psychotherapist-patient records." Majority Op. at 123. By way of distinguishing that case from this one, it makes much of the fact that the records in *Zaal v. State*, 326 Md. 54, 602 A.2d 1247 (1992) were educational records, discoverable pursuant to a judicial order or lawfully issued subpoena, as opposed to being records subject to a statutory privilege and of the fact that we acknowledged in *Zaal* that the regulations did not preclude discovery pursuant to the Maryland Rules. Of course we recognized, as the State points out, that the trial court's ruling was not based on the applicability of a privilege;· rather, it was premised on the general right to privacy provided by the regulations. It is perhaps of some interest to note that Black's Law Dictionary defines a confidential communication as:

volved the propriety of a defendant charged with child sexual abuse obtaining the pretrial discovery, for relevant impeachment information, of the school records of the child he was accused of abusing, when regulations promulgated to implement the timely Education Rights and Privacy Act of 1974 made "manifest that 'confidentiality and privacy of the student's education records are important considerations.'" *Id.*, 326 Md. at 76, 602 A.2d at 1258.

To be sure, the primary focus in *Zaal* was on when the defendant himself, through counsel, should have direct access to the records. *See Id.* at 82, 602 Md. at 1261. This was so because the trial court resolved the threshold issue, the issue herein presented, in favor of the defendant. So it was that we discussed the special problem that cases turning on credibility pose—discerning what evidence is impeachment evidence—, *id.*, and, with an eye toward providing judges with "remedies which will take account of the rights of the accused and, at the same time, protect the interest of the victims," *id.* at 86, 602 A.2d at 1263, formulated options other than *in camera* inspection by the judge alone, to be used in the review of confidential, sensitive matters. *Id.* at 84–87, 602 A.2d at 1262–1263.

The majority recognizes that *Zaal* involved pretrial discov-

---

Privileged communications such as those between spouses, physician-patient, attorney-client, confessor-penitent, etc. Such are privileged at the option of the spouse-witness, client-witness and penitent-witness. [A] Confidential communication is [a] statement made under circumstances showing that [the] speaker intended [the] statement only for [the] ears of [the] person addressed; thus if [a] communication is made in [the] presence of [a] third party whose presence is not reasonably necessary for the communication, it is not privileged.

Black's Law Dictionary 298 (6th ed. 1990). Similarly, privileged communications are defined as:

Those statements made by certain persons within a protected relationship such as husband-wife, attorney-client, priest-penitent and the like which the law protects from forced disclosure on the witness stand at the option of the witness, client, penitent, spouse ...

*Id.* at 1198. As these definitions make clear, there is considerable overlap between a privileged communication and a confidential one. What perhaps distinguishes one from the other is the degree of sensitivity involved.

ery.[4]   To rationalize the result it reaches in this case, as opposed to that reached in *Zaal,* the majority suggests that *Zaal,* like *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), " 'rejected defendant's confrontation clause argument, reasoning that it is a trial right, not one applicable to discovery.' "   Majority Op. at 125, quoting *Zaal,* 326 Md. at 67 n. 6, 602 A.2d at 1253 n. 6, citing *Ritchie,* 480 U.S. at 52, 107 S.Ct. at 999, 94 L.Ed.2d at 54.   It then asserts that the *Zaal* court adopted the Supreme Court's due process analysis, thus recognizing that "there may be a denial of due process when the *government's* records containing potentially exculpatory information were withheld from an accused." *Id.* at 125.   The majority also relies upon *Avery v. State,* 15 Md.App. 520, 292 A.2d 728 (1972), *appeal dismissed,* 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973).

To be sure, in the *Zaal* decision, we reviewed the *Ritchie* decision in some detail.   A major part of that review was in connection with our consideration of the issue of the extent to which an advocate should be afforded the opportunity to inspect confidential information for possible use in cross-examination. *See* Part IV of *Zaal,* 326 Md. at 81–87, 602 A.2d at 1260–1263.   It was in this context that we acknowledged the similarities, factually, between *Zaal* and *Ritchie;* indeed, we expressed the view that "[p]rocedurally, this case and *Ritchie* are quite similar." *Id.* at 81, 602 A.2d at 1260.   At the same time, however, we reviewed, again in some detail, *Carr v.*

---

**4.**  The majority recognizes that "[i]t is conceivable that a trial subpoena under Md. Rule 4–265 for a witness and documents, which may be privileged, could be reviewed pre-trial on a motion to quash or a motion for a protective order."   Majority Op. at 132.   Rather than simply recognizing that this is precisely what was sought to be done, it persists in continuing on the frolic it has chosen to pursue.   This is reflected in the review standard it formulates: "a reasonable likelihood that the privileged records contain certain exculpatory information necessary for a proper defense."   Majority Op. at 133.   As I understand that standard, without the benefit of reviewing the records, the defendant must be able to identify exactly what exculpatory evidence is being sought and the court must be able to inquire about exactly how that evidence would be exculpatory.   The majority requires, in short, that the defendant be able to meet an impossible burden.

*State*, 284 Md. 455, 397 A.2d 606 (1979), in which we used the *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), analysis to resolve the issue "whether under the facts and circumstances of his criminal trial [a defendant] had a right to obtain and use the written statements of a State's witness for purposes of cross-examination or impeachment," *id.*, 284 Md. at 456, 397 A.2d at 606, and *Leonard v. State*, 46 Md.App. 631, 637–39, 421 A.2d 85, 88–89 (1980), in which the Court of Special Appeals reiterated and explicated the principles enunciated in *Carr*. It is of some interest that we also factually compared *Zaal* to those cases. It is, therefore, inaccurate to even suggest that the *Zaal* court, like the *Ritchie* court, rejected the defendant's confrontation clause argument as being one applicable only to discovery. *See* Majority Op. at 123. Likewise, it is inaccurate to even intimate that the *Zaal* court adopted the *Ritchie* court's due process analysis, thus placing the denial of due process squarely on the fact that "the *government's* records containing potentially exculpatory information were withheld from an accused." Majority Op. at 125.

## II.

Factually, of course, a state agency's records were involved in *Zaal*. That did not, however, play a decisive role in our analysis. Indeed, it is quite clear that the *Zaal* opinion, unlike *Avery*, did not view the facts of that case as presenting a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) situation. In addition to Part V of the *Zaal* opinion, *see also* footnote 2, (326 Md. at 62, 602 A.2d at 1251) in which the Court opined:

> The petitioner makes no contention, with good reason, that the records are discoverable pursuant to Maryland 4–263. That rule places the obligation on the State to disclose, but it presupposes that the information is in the prosecution's possession or under its control.

In any event, the distinction that the majority draws between a state agency's files and a third party's file is really

one without a difference. Several courts have rejected its viability. *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993); *State v. Gagne*, 136 N.H. 101, 612 A.2d 899 (1992); *Commonwealth v. Miller*, 399 Pa.Super. 180, 582 A.2d 4 (1990).

In *Cressey*, the Supreme Court of New Hampshire admonished the trial court for making a distinction between records that were under the control of a state agency and those under the control of a psychologist employed by a private mental health facility. Citing *Gagne*, the court characterized it as "a distinction without a difference." 628 A.2d at 703, noting that "balancing the rights of a criminal defendant against the interest and benefits of confidentiality lies equally in both cases." *Id.* at 703. The court also stated: "[a] record is no less privileged simply because it belongs to a state agency. Likewise, the defendant's rights are no less worthy of protection simply because he seeks information maintained by a non-public entity." *Id.* at 704.

The argument was made in *Miller* that it made a difference whether the information the defendant sought to discover pursuant to his State constitutional confrontation and compulsory process rights was in the hands of a state agency or a private entity. Rejecting that argument, the same one made by the majority, the court said, "[w]hen the nature of the evidence is such that denying a defendant the opportunity to review it in effect denies him his constitutional right to confrontation and compulsory process, he is entitled to review that evidence, regardless of whether it is in the hand of the commonwealth or a private institution." *Id.*, 582 A.2d at 708. *See also In re Doe*, 964 F.2d 1325, 1329 (2d Cir.1992) (*in camera* review of private psychiatrist records permitted at discovery stage); *State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 240, 836 P.2d 445, 453 (same); *State v. L.J.P.*, 270 N.J.Super. 429, 637 A.2d 532, 536 (1994) (same).

### III.

Maryland's psychotherapist/patient privilege is codified at Maryland Code (1957, 1989 Repl.Vol, 1993 Cum.Supp.) § 9–

109(b) of the Courts and Judicial Proceedings Article. It provides:

> (b) *Privilege generally.*—Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder.

Unknown at common law, the privilege was enacted in 1963 to, as the terms of the statute make clear, protect a patient from the disclosure of confidential communications he or she might make to his or her therapist. Lynn McLain, *Maryland Evidence*, § 504.1 at n. 2 530 (1987 & Supp.1994), citing Rappeport, *Psychiatrist–Patient Privilege*, 23 Md.L.Rev. 39, 43 (1963). *See* B.W. Best, Annotation, "Privilege, In Judicial or Quasi–Judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient," 44 A.L.R.3rd 24 (1993). The policy underlying the privilege is the encouragement of effective "diagnosis" and "treatment" through ensuring confidentiality of communications. Rappeport, 23 Md.L.Rev. at 49. Although none is applicable under the facts *sub judice*, section 9–109(d) provides six instances when the privilege does not exist.[5]

---

**5.** It provides:

> There is no privilege if:
>
> (1) A disclosure is necessary for the purposes of placing the patient in a facility for mental illness; (2) A judge finds that the patient, after being informed there will be no privilege, makes communications in the course of an examination ordered by the court and the issue at trial involves his mental or emotional disorder; (3) In a civil or criminal proceeding: (i) the patient introduces his mental condition as an element of his claim or defense; or (ii) After the patient's death, his mental condition is introduced by any party claiming or defending through or as a beneficiary of the patient; (4) The patient, an authorized representative of the patient, or the personal representative of the patient makes a claim against the psychiatrist or licensed psychologist for malpractice; (5) Related to civil or criminal proceedings under defective delinquency proceedings; or (6) The patient expressly consents to waive the privilege, or in the case of death or disability, his personal or authorized representative waives the privilege for purpose of making claim or

Section 9–109 does not expressly provide, one way or the other, whether the psychologist/patient privilege is absolute. Maryland law, however, makes it clear that statements, by a patient made to his or her psychologist, about child abuse are not privileged, as health care providers, "acting in a professional capacity," are required to report such abuse to the proper authorities. Md.Code (1984, 1991 Repl.Vol.) § 5–704(a) of the Family Law Article.[6] *See also Reynolds v. State,* 98 Md.App. 348, 369, 633 A.2d 455, 465 (1993) ("statements about child abuse are not privileged and must be reported by health care providers, '[n]otwithstanding any other provision of law, including any law on privileged communications' "). Furthermore, because claims of privilege quite frequently result in the exclusion of relevant exculpatory evidence, a matter which frustrates the fact finding process, privilege statutes are narrowly construed. 5 McLain, § 504.1 at 532 n. 13; *Reynolds,* 98 Md.App. at 368, 633 A.2d at 464; *State v. L.J.P.,* 270 N.J.Super. 429, 637 A.2d 532, 537 (1994), citing *State v. Schreiber,* 122 N.J. 579, 585 A.2d 945 (1991).

This Court has not heretofore had occasion to consider whether § 9–109(b), or any other *statutory* privilege, for that matter, absolutely precludes discovery of records protected by privilege. Although we enunciated a procedure for striking the proper balance between a victim's privacy interest in confidential records and due process discovery rights of the defendant, as we have seen, that was not the issue in *Zaal.* Nor was it the issue in *Department of Social Services v. Stein,* 328 Md. 1, 612 A.2d 880 (1992), a civil case in which we applied the *Zaal* procedure.

---

bringing suit on a policy of insurance on life, health, or physical condition.
Md.Code (1957, 1989 Repl.Vol., 1993 Cum.Supp.) § 9–109(d) of the Courts and Judicial Proceedings Article.

**6.** Md.Code (1984, 1991 Repl.Vol.). Section 5–705(a)(2) and (3) except from the reporting requirement attorney/client communications and communications made by a penitent to a minister, clergyman or priest pursuant to Md.Code (1974, 1989 Repl.Vol.) §§ 9–108 and 9–111 of the Courts and Judicial Proceedings Article.

The Court of Special Appeals, on two prior occasions, has addressed whether the psychologist/patient privilege precludes discovery, by a defendant, of information under its protection. *See Avery v. State,* 15 Md.App. 520, 292 A.2d 728 (1972), *appeal dism. cert. denied,* 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973); *Reynolds v. State,* 98 Md.App. 348, 633 A.2d 455 (1993). *See also Oliver v. State,* 53 Md.App. 490, 454 A.2d 856 (1983) (no constitutional right to cross-examine a witness about psychiatric reports when that witness refuses to waive the section 9–109(b) privilege).

In *Avery,* the intermediate appellate court upheld a trial court ruling denying a defendant's motion to compel the State to produce an assault and battery victim's psychiatric records for inspection or, in the alternative, to dismiss the indictment with prejudice. It is not clear from the court's opinion whether, other than a proffer that the records existed, the defendant proffered why he believed he was entitled to inspect the records. Responding to the argument that Maryland Code (1957, 1971 Repl.Vol.) Art. 35, § 13A(b) [7], the precursor of section 9–109(b), was unconstitutional because it denied the defendant due process and fundamental fairness, the court stated:

> The privilege of non-disclosure afforded by the statute is facially constitutional and appellant cites no authority, constitutional or otherwise, which would nullify the protection extended by the statute. Where, as here, the witness claimed the privilege, no suppression of evidence by the State is involved within the contemplation of such cases as *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967).

---

7. That section provided:

    "Except as hereinafter provided, in civil and criminal cases, * * *, a patient, or his authorized representative, has a privilege to refuse to disclose, and to prevent a witness from disclosing, communication, wherever made, relating to diagnosis or treatment of the patient's mental or emotional disorder, provided, that the presiding judge of a court of record may compel such disclosure in cases involving the custody of children, * * *."

*Id.,* 15 Md.App. at 537, 292 A.2d at 741. Since the court held that inspection was not appropriate, the defendant's request that the records be reviewed by the trial court *in camera* was also denied. *Id.* at 538, 292 A.2d at 741.

Although the Court of Special Appeals acknowledged that the section 9–109(b) privilege affords a patient's psychotherapy records greater protection than did the regulations construed in *Zaal* and the statute in *Ritchie,* (1987), it nevertheless recognized the defendant's "due process right to discover and put before the factfinder evidence that might influence the determination of guilt ... [including] evidence ... that a State's witness is now, or was at a relevant period of time, suffering from a mental disability that reasonably calls into question his or her ability to observe, recall, or communicate." *Reynolds,* 98 Md.App. at 364, 633 A.2d at 462, citing *Ritchie,* 480 U.S. at 56, 107 S.Ct. at 1000–1001, 94 L.Ed.2d at 56, and *Reese v. State,* 54 Md.App. 281, 289–292, 458 A.2d 492 (1983). Rather than the procedure enunciated in *Zaal* for resolving conflicts between a defendant's due process discovery rights and the privacy interests of a victim or the State in potentially relevant records, however, the intermediate appellate court adopted the procedure this Court announced in *Hamilton, Superintendent v. Verdow,* 287 Md. 544, 566–67, 414 A.2d 914, 926–27 (1980), for the resolution of claims of executive privilege. Under that procedure, once materials have been determined to be presumptively privileged, the burden shifts to the party seeking them to show either that they are not privileged or that there is some necessity for their production notwithstanding the privilege. *Verdow,* 287 Md. at 566, 414 A.2d at 926. Only when the requisite showing has been made to overcome the presumption will the court conduct an *in camera* inspection of the materials. *Id.* at 566, 414 A.2d at 926.

## IV.

### A.

There are cases that hold that the psychologist-patient privilege is absolute and, thus, communications and other

materials subject to its protection are not discoverable. *See People v. District Court of Denver,* 719 P.2d 722 (Colo.1986); *People v. Foggy,* 149 Ill.App.3d 599, 102 Ill.Dec. 925, 500 N.E.2d 1026 (1986), *leave to appeal granted,* 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86 (1988)[8]; *Com. v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992) *cert. denied, sub. nom, Aultman v. Pennsylvania,* — U.S. —, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992)[9]; *Com. v. Smith,* 414 Pa.Super. 208, 606 A.2d 939, *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1992); *Com. v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 *appeal denied,* 518 Pa. 617,

---

**8.** The Supreme Court of Illinois affirmed *People v. Foggy,* 102 Ill.Dec. 925, 500 N.E.2d 1026 (Ill.App.1986). *See People v. Foggy,* 118 Ill.Dec. 18, 521 N.E.2d 86 (1988). While it appears that the Court, agreeing with the appellate court, adopted the absolute privilege rationale, *see* 118 Ill.Dec. at 23, 521 N.E.2d at 91, its observation at the end of the opinion, leaves the issue in doubt:

> In sum, § 8–802.1 of the Code of Civil Procedure evinces a strong public policy in favor of the confidentiality of communications between sexual assault victims and counselors. Unlike the defendant in *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, who knew of specific information that could show bias or motive to fabricate on the part of the prosecution witness, and who had no other means of achieving that end, the defendant here has offered no reason to believe that the victim's counseling records would provide a source of impeaching material unavailable from other sources. We conclude that the defendant was not denied due process, nor was his confrontation right violated, by the trial judge's refusal in this case to conduct an *in camera* inspection of the victim's counseling records. *Id.* 118 Ill.Dec. at 24, 521 N.E.2d at 92.

**9.** It is of some interest that the Supreme Court of Pennsylvania in *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989), without even discussing the psychologist-patient privilege, or mentioning, *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120, *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1987), held that under the Pennsylvania Constitution's confrontation and compulsory process clauses, defense counsel was entitled to access to the contents of the psychotherapeutic records of an alleged rape victim. The result in *Lloyd* was explained by the Court in *Com. v. Wilson,* 529 Pa. 268, 602 A.2d 1290, 1297–98 (1992):

> The Court voted, however, that the *Lloyd* case, unlike the *Ritchie* case, did not involve a statutory privilege. Rather, the Court in *Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights. Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest.

541 A.2d 744 (1987).[10]  *See also Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992) (privilege covers the records memorializing the communications between the client and the psychologist).

*Kyle* is representative of the reasoning in these cases. There, the court stated its dilemma: it was "presented with a situation where the interests of the accused in learning of favorable witnesses as well as obtaining arguably useful information directly conflicts with society's interest in maintaining confidentiality between a psychologist and a client." 533 A.2d at 125 (footnote omitted). Noting that *Ritchie* both involved a statutory conditional privilege, which did not preclude all use of the protected information, and made clear that a defendant's rights are not without limitation, the court concluded that "a compelling public interest would justify the total nondisclosure of information [protected by the psychologist-patient privilege]." *Id.* The court then concluded that the public interest is served by the psychologist-patient privilege:

Patient confidence is essential for effective treatment. Because the information revealed by the patient is extremely personal, the threat of disclosure to outsiders may cause the patient to hesitate or even refrain from seeking treatment. The privilege thus serves the public interest in promoting a society in which the general well-being of the citizenry is protected. We find that this public interest is especially compelling where, as here, the victim of a crime has sought post-assault treatment knowing that her testimony would be a necessary part of the prosecution's case. Indeed, the fact that the legislature determined confidential information was

---

10. *State v. Baker,* 582 So.2d 1320 (La.App.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992) and *State v. Parker,* 294 S.C. 465, 366 S.E.2d 10 (1988), both cited by the State, did not consider whether disclosure was constitutionally required. Accordingly, like *Avery v. State,* 15 Md.App. 520, 292 A.2d 728 (1972), *appeal dism., cert. denied,* 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973), they are not directly apposite.

inadmissible as evidence under the statutory privilege demonstrates a recognition of this public policy consideration. *Id.* at 126–127 (footnotes and citations omitted).

Whether the privilege outweighed the accused's interest in discovering information useful to the defense was the next issue the court addressed. As to it, the court stated:

> Having reviewed the language of the statutory privilege enacted by our legislature and having given consideration to the public policies underlying the absolute privilege as well as the relevant cases in this and other jurisdictions, we find that the interests protected by the privilege are substantial. We are, of course, cognizant of the heavy weight afforded to appellant's interest in disclosure of the victim's file. Nonetheless, in weighing the public interests protected by shielding the file with those advanced by disclosure, we conclude that the balance tips in favor of non-disclosure. Nor do we believe that our decision today will unduly infringe on the rights of the accused. First, we note that as a matter of constitutional law, our courts have upheld testimonial privileges which bar a criminal defendant from obtaining or using confidential communications.... Here, the privilege only limits access to statements made during the course of treatment by the psychologist. It does not foreclose all lines of defense questioning. Likewise, the privilege does not unfairly place the defense in a disadvantageous position; like the defense, the prosecution does not have access to the confidential file and, thus, cannot use the information to make its case.

*Id.* at 129–30 (citations omitted). Additionally, the court declared that the interest protected precludes even *in camera* review by the court:

> We decline to compromise what we have determined is an absolute privilege from disclosure. As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying

considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.

*Id.* at 131 (footnote omitted).

### B.

Other courts, indeed, the majority that have considered the question, including, as we have seen, the Court of Special Appeals, *see Reynolds, supra.,* hold that the psychologist-patient privilege is not absolute.[11] *E.g. State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 239, 836 P.2d 445, 452 (App.Div. 1 1992); *State v. Hufford,* 205 Conn. 386, 533 A.2d 866, 875–77 (1987); *Bobo v. State,* 256 Ga. 357, 349 S.E.2d 690, 691–92 (1986); *People v. Bean,* 137 Ill.2d 65, 147 Ill.Dec. 891, 560 N.E.2d 258, 270–75 (1990); *Commonwealth v. Bishop,* 416 Mass. 169, 617 N.E.2d 990, 994–95 (1993); *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557, 577 (1994); *People v. Adamski,* 198 Mich.App. 133, 497 N.W.2d 546, 548–50 (1993); *State v. Hummel,* 483 N.W.2d 68, 71–72 (Minn.1992); *State v. Ramos,* 115 N.M. 718, 858 P.2d 94, 97–99 (1993); *State v. Donnelly,* 244 Mont. 371, 798 P.2d 89, 91–92 (1990); *State v. Trammell,* 231 Neb. 137, 435 N.W.2d 197, 200–01 (1989); *State v. Cressey,* 137 N.H. 402, 628 A.2d 696, 703–04 (1993); *State v.*

---

**11.** Some of these, as the majority points out, notably *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557 (1994) and *State v. Trammell,* 231 Neb. 137, 435 N.W.2d 197 (1989), as a sanction for refusal to waive the privilege once the threshold needs showing has been made, prohibit the testimony of the complaining witness or, if the witness has already, testified, requires that testimony to be strickened. *See also State v. Whitaker,* 202 Conn. 259, 520 A.2d 1018, 1025 (1987).

These cases recognize that confrontation is more than physical, that the primary interest it secures is the right to cross-examination. Thus, they perceive this result "to be the only method by which both the rights of the witness [to privacy] and the right of the defendant [to confront his or her accuser] may be accommodated." *Trammell,* 435 N.W.2d at 201.

*L.J.P.,* 270 N.J.Super. 429, 637 A.2d 532, 536 (1994); *State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719, 721–23 (1993); *Gale v. State,* 792 P.2d 570, 581 (Wyo.1990); *Advisory Opinion to the House of Representatives,* 469 A.2d 1161, 1163 (R.I.1983). *See also In re Doe,* 964 F.2d 1325, 1327–29 (2nd Cir.1992); *United States v. Lindstrom,* 698 F.2d 1154, 1167 (11th Cir. 1983). *See State v. Allman,* 177 W.Va. 365, 352 S.E.2d 116, 120 (1986) (by statute, privileged information is discoverable "pursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by [the statute]."). With but few exceptions, the defendant's constitutional rights of confrontation, compulsory process, and/or due process are vindicated through use of an *in camera* proceeding in which the court alone reviews the privileged material for relevant usable evidence. *E.g. In re Doe,* 964 F.2d at 1329, *Romley,* 836 P.2d at 453 ("[A]ny restrictions on defendant's access to information essential to preparation for effective, reasonable cross-examination or impeachment of the victim in this case imposed pursuant to the victim's Bill of Rights must be proportionate to the interest of protecting the victim as balanced against the defendant's due process right to a fundamentally fair trial."); *Hufford,* 533 A.2d at 876, *Lindstrom,* 698 F.2d at 1166–68; *State v. Trammell,* 435 N.W.2d at 201.

*Bishop* is typical of the rationale employed by these courts. In that case, the court recognized the competing interests as being, on the one hand, the need to minimize the danger that the exclusion of relevant evidence for a purpose other than enhancing the truth-seeking function will result in an innocent defendant being convicted and, on the other, the need to avoid "the chilling effect which routine disclosures [of privileged information] may have in preventing those in need from seeking that help." 617 N.E.2d at 994, quoting *Commonwealth v. Collett,* 387 Mass. 424, 439 N.E.2d 1223, 1226 (1982). Underlying the interests in disclosure, the court noted, are the propositions that "when relevant evidence is excluded . . . for some purpose other than enhancing the truth-seeking func-

tion, the danger of convicting an innocent defendant increases," and that "at a minimum . . . criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Id.*, quoting *Ritchie*, 480 U.S. at 56, 107 S.Ct. at 1000, 94 L.Ed.2d at 56. In addition to the purpose for privileges—prevention of the chilling effect of disclosures—the court pointed out that disclosure "serves as a disincentive to the maintenance of [the privileged] relationships." *Id.* Balancing these interests, the court recognized "that in *certain* circumstances a defendant must have access to privileged records so as not to undermine confidence in the outcome of trial." *Id.* at 994–995.

Similarly, the court in *Adamski* held "that confidential or privileged information must be disclosed where a defendant's right to effective cross-examination would otherwise be denied." 497 N.W.2d at 548–50. The court pointed out that "[i]t appears well settled as a matter of constitutional law that common-law or statutory privileges, even if purportedly absolute, may give way when in conflict with the constitutional right of cross-examination," and that "[p]rivileges such as the one before us in this matter are intended to encourage society's interest in open discussion between persons in need and those from whom they seek help [but], [a]t the same time, however, privileges impede ability to present a defense by limiting the evidence available." *Id.* at 548–50.

The *Bishop* court, in defining its task, opined:

The issue then devolves to the need to articulate a standard that judges can apply to identify those circumstances in which disclosure of the victim's records privileged by statute is required to provide the defendant a fair trial. It may be said that the controverted privilege shall be pierced in those cases in which there is a reasonable risk that nondisclosure may result in an erroneous conviction. Our charge, then, is to describe a standard that defines the line between a less inclusive standard (disclosure is not ordered when it should be ordered) and an overly inclusive standard (disclosure is ordered when it should not be ordered), resolving any doubt in favor of disclosure.

617 N.E.2d at 995. The standard the court articulated required the defendant to meet a "threshold burden" of showing "at a minimum, a likelihood that the records contain relevant evidence to justify initial judicial review." *Id.*

## C.

The cases holding that the privilege is not absolute, which I find persuasive, are consistent with the rationale we employed in *Zaal* and the Court of Special Appeals employed in *Reynolds.* Consequently, I would hold that the psychotherapist-patient privilege embodied in section 9–109(b) is not absolute. Accordingly, I would reverse the judgment of the intermediate appellate court.

## V.

The State alternatively argued, and the majority today holds, that the trial court properly refused to disclose the subject records because the petitioner's proffer was inadequate. Although cognizant that *Zaal* enunciated a balancing test to resolve the competing interests of defendants in disclosure and of the victims and the State in non-disclosure of confidential information and enumerated relevant factors in that regard, they favor adoption of a more stringent test. Indeed, the test the majority announces is "a reasonable likelihood that the privileged records contain exculpatory information necessary for a proper defense." Majority Op. at 133.

Clearly, records protected by the psychologist-patient privilege enjoy a heightened level of protection, but as previously noted, the privilege is not absolute. Therefore, having determined that a defendant's interest in a fair trial may outweigh the privacy interest of a victim or the State in the information made confidential by the applicable privilege, this Court in *Zaal* fashioned a procedure by which those interests could be balanced. Notwithstanding that it did not specifically address the discoverability of privileged records and it endorses review options other than *in camera* review by the court alone, I

believe that the test it enunciated adequately addresses and balances the interests implicated in the case *sub judice.*

Applying the *Zaal* test, I conclude that both the trial court and the Court of Special Appeals erred. The trial judge perceived the dispositive issue to be whether the petitioner's proffer made plausible that the psychotherapy records contained information bearing on the victim's *capacity to perceive.* It rejected any notion that the records could, or should, be reviewed for evidence useful in cross-examining the victim concerning her motivation, bias, and veracity. *Zaal* and the cases holding that the due process rights of a defendant can override a statutory privilege recognize that the purpose of review is not so limited. The Court of Special Appeals erred in holding, as a matter of law, that the "need to inspect" threshold was not met in this case. The court should have considered and analyzed the petitioner's proffer in light of the *Zaal* standard. *Zaal,* 326 Md. at 88, 602 A.2d at 1264. Therefore, the petitioner is entitled to a new trial.

At the threshold, a defendant is required to establish a "need to inspect." *Id.* at 81, 602 A.2d at 1260. In that regard, we noted in *Zaal* that where the defense relies heavily on credibility or matters similarly treated, whether the information would be useful in rebutting the plaintiff's case or impeaching the complaining witness "depends upon the circumstances, including context, and, to a large extent, the perception of the person interpreting it." *Id.* at 82, 602 A.2d at 1261. To like effect, *see Bishop,* 617 N.E.2d at 996 n. 6 and *Shiffra,* 499 N.W.2d at 722. To meet the "need to inspect" threshold, the defendant must proffer some relationship between the charges, the information sought, and the likelihood that review of the records will reveal relevant information. *Id.* at 81–82, 602 A.2d at 1260–1261. Therefore, taking into account the issues before the court and the seriousness of the charges facing the defendant, the proffer must not be frivolous, must place before the court the petitioner's legitimate concerns, and must give plausibility to the defendant's stated need to review

the records for relevant information. *Id.* at 83, 602 A.2d at 1262.[12]

We made clear in *Stein* what was only implicit in *Zaal,* that the proffer of relevance could not be very specific since the defendant will not have seen the records and could not possibly know what was in them. 328 Md. at 30, 612 A.2d at 894. We did not, however, sanction or encourage fishing expeditions by counsel. We had required in *Zaal,* and continued to require in *Stein,* that counsel must proffer "a reasonable possibility that review of the records would result in discovery of usable evidence...." *Stein,* 328 Md. at 30, 612 A.2d at 894. Although the defendant need not show that the records actually contain material information, the proffer cannot be "merely a desperate grasping at a straw." *Bishop,* 617 N.E.2d at 997.

The State argues[13] that the petitioner's proffer is weaker than that in both *Zaal* and *Stein,* because it enumerates only

---

**12.** This is consistent with what other courts that have determined that the psychologist-patient privilege may be overridden by a defendant's need to discover favorable and useful information require as a threshold showing of need. *Bishop,* 617 N.E.2d at 995, 997 ("a defendant must show, at a minimum, a likelihood that the records contain relevant evidence to justify initial review;" "defense counsel shall submit to the judge, in writing, the theory or theories under which the particular records sought are likely to be relevant to an issue in the case"); *State v. Howard,* 221 Conn. 447, 604 A.2d 1294, 1300 (1992) ("reasonable ground to believe failure to produce records likely would impair defendant's right to impeach witness"); *Hummel,* 483 N.W.2d 68, 72 (Minn.1992) (plausible showing that information is material and favorable to defense); *State v. Gagne,* 136 N.H. 101, 612 A.2d 899, 901 (1992) (reasonable probability that the records contain information that is material and relevant); *State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719, 721 (1993) ("preliminary showing that the sought after evidence is material to his or her defense").

**13.** In *Zaal,* the defendant subpoenaed the school records of his granddaughter, whom he was charged with sexually abusing. He hoped review of those records would develop impeachment evidence. When the Board of Education refused to comply with the subpoena, he proffered their relevance, which we summarized:

Because, he noted, he was aware that the victim had an emotional disability requiring special education and he denied her allegations, the case would likely turn on the victim's credibility. Therefore, he continued, it was necessary that he be able to attack her credibility

two facts: the incident at issue occurred ten years earlier and the victim was in counseling. The majority agrees that the proffer is insufficient. Therefore, adopting the State's argument, the majority holds, as a matter of law, that the petitioner's proffer does not cross the "need to inspect" threshold. Majority Op. at 132–135. I do not agree.

In this case, the petitioner's proffer of relevance asserted that credibility was going to be a critical issue at trial. In support of that assertion he contended that the victim was in counseling; *i.e.*, 10 years, had elapsed between the last alleged act of sexual abuse and the bringing of charges; that he had no contact with the victim for a considerable period of time and, hence, was without knowledge as to what her emotional state was; that the psychologist's records might show that the victim was delusional; that the victim may never have told her therapist about the alleged abuse, or may have done so only recently. He also noted that the victim told the police that it took years of counseling for her to summon the courage to bring the charges.

As we pointed out in *Zaal*, in addition to the specific proffer, the court must take into account the circumstances of the case, including the nature of the charges brought against the defendant, and the issue before the court. The query is, "[H]as the petitioner placed before the court 'legitimate concerns and [given] plausibility to his stated need to review the records for

---

and, specifically, to explore her motivation, bias and veracity. This would not be possible, he proffered, "without access to some records indicating the nature and extent of the child's disability." Moreover, he suggested that the records might reveal "a pattern of behavior pre-existing that would impinge upon [the victim's] believability in the statement." In fact, that the victim was in a "special classroom" as a result of an "emotional disturbance" bears, he asserts, on whether there was "a physical basis that would relate to her capacity to observe and relate" or "a mental deficiency leading to an inability to control actions." Furthermore, petitioner noted "the extreme antagonism [that] had existed for a number of years between himself and the victim's father," contending that the victim's awareness of that hostility may indicate a bias on her part which caused her to fabricate the incident.

326 Md. at 62–63, 602 A.2d at 1251.

relevant information[?]' " *Zaal,* 326 Md. at 83, 602 A.2d at 1262. Among the significant circumstances of this case is the amount of time that elapsed between the time of the alleged commission of the last criminal act and the filing of the complaint. This should be considered. Additionally relevant is the timing of the decision to undergo psychotherapy and its focus. Of particular interest here is that the psychotherapy occurred years after the incident giving rise to the criminal charges and the trauma at which the psychotherapy ostensibly is aimed. This factor is particularly important in this case in light of repressed memory syndrome, also known by opponents as false memory syndrome, a phenomenon which recently has gained nationwide attention.[14] Undoubtedly, a stronger

---

14. Repressed memory syndrome relates to the recovery of sexual abuse memories triggered by suggestion or by seemingly "unrelated events." See Dan Trigoboff, *Maryland Repressed Memory Cases Expose Rift in Psychotherapy: Failed Civil and Criminal Actions against Accused Fathers Have Even Proponents Of Embattled Diagnosis Questioning Value Of Legal Action,* the Daily Record, May 14, 1994. See also Gary M. Ernsdorff & Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression,* 84 J.Crim.L. & Criminology, 129, 143 (1993); Sandra G. Boodman, *Advocacy Group for "Aggrieved Parents" Fights Back,* The Washington Post, April 12, 1994; Sandra G. Boodman, *At 28, Kathy O'Connor of Arlington says she remembered that her father raped her. She sued him and lost. Are Delayed Memories Like Hers True or False?,* The Washington Post, April 12, 1994; Sandra G. Boodman, *The Professional Debate Over An Emotional Issue,* The Washington Post, April 12, 1994; Elizabeth F. Loftus, *You Must Remember This,* The Washington Post, July 27, 1993; Victoria Slind–Flor, *He Says Recovered Memories Ruined Him: Ex Mondavi Wine Exec Sues His Daughter's Therapists, Who Elicited Disputed Recollections,* The National Law Journal, April 18, 1994. There is concern that some repressed memories may be false. "They can return abruptly, they can seem terrifyingly real, they can be influenced by therapists and they can be false." Boodman, *The Professional Debate Over An Emotional Issue, supra,* at 13. Accordingly, the court may decide to consider the amount of time it took the complaining witness to bring the charges.

That there is a record of the complaining witness having "reported" the sexual abuse to the Department of Social Services when she was 17 is not proof positive that repressed memory syndrome is not an issue in this case. The Social Services report characterized the allegations as vague and noted the victim's refusal or unwillingness to cooperate. The detail with which the complaining victim testified and her acknowledgment that it was psychotherapy that enabled her to gain the courage

threshold showing may be required to be proffered when the psychotherapy records sought are those of a victim who entered post-assault treatment, knowing that his or her testimony would be a necessary part of the prosecution's case, *see Kyle*, 533 A.2d at 126, as opposed to one whose treatment is obtained, and continued, long after the event directly giving rise to the need for therapy has terminated.

Although not directly so proffering in this case, the petitioner must have sought the records to effectively cross-examine the victim concerning the charges. Since the petitioner has not seen the records and cannot know what is in them, his proffer cannot be very specific. *See Stein*, 328 Md. at 30, 612 A.2d at 894; *Bishop*, 617 N.E.2d at 996, n. 6. As in *Zaal*, however, the petitioner's proffer, confirmed by the evidence adduced at trial, made clear that the critical issue in the case was clearly one involving credibility. The victim's version of the incident and that of the petitioner are diametrically and irreconcilably different. The lapse of time between the alleged incidents and their reporting, the fact that it was through counseling that she obtained the courage to bring the charges, and the fact that the counseling was obtained long after the acts alleged were committed, all raise the possibility that review of the counseling records will reveal relevant, useable information. Indeed, the latter two facts logically could suggest review in the interest of possibly discovering the source of the victim's memory of the events.[15]

Determining that the "need to inspect" threshold has been crossed does not end the court's task; it still must decide how the review will be conducted—which of the options identified in *Zaal* it will order. In *Zaal*, this Court recognized that

---

to bring the charges highlight the fact that whether counseling has played a role in enhancing her memory is very much an issue.

**15.** During her testimony, the petitioner stated that her doctor suggested that she keep a diary of her new memories because "all these things were being stirred up." Therefore, any memory enhancing methods that may have been used by the doctor during the sessions could be useful in assessing the credibility of the witness and the accuracy of the charges.

"[j]uxtaposed against petitioner's proffer is the victim's legitimate [privacy] interest" and that granting the defendant unrestricted access to the victim's confidential records could have adverse effects. *Id.*, 326 Md. at 83–84, 602 A.2d at 1262. It was in the interest of balancing these competing interests that we observed:

> How significant that concern is, however, depends directly on the options available to the court; to the extent that the court has only two options—*in camera* review by the court alone or ordering unqualified access of the records to the accused—vindication of the victim's privacy rights may require a more restrictive attitude with respect to the accused's access to the victim's records. If there are other options, an intermediate position, perhaps, the accused's access may be expanded.

*Id.* at 84, 602 A.2d at 1262. Noting that "[w]here sensitive matters are involved, it is the responsibility of trial judges to fashion remedies which will take account of the rights of the accused and, at the same time, protect the interest of victims," *Id.* at 86, 602 A.2d at 1263, we adopted the expanded *in camera* review proceeding enunciated in *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 1002 (1991) [16] to avoid a trial judge being required to perform that function

---

16. The procedure endorsed by the court in *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 1002 (1991), has been modified by *Commonwealth v. Bishop*, 416 Mass. 169, 617 N.E.2d 990 (1993). In *Bishop*, the court held that "the defendant must show, at the threshold, that records privileged by statute are likely to contain relevant evidence. If the judge finds, based on the defendant's proffer, that the records are likely to be relevant to an issue in the case, the judge shall review the records *in camera* to determine whether the communications, or any portion thereof, are indeed relevant." *Id.* 617 N.E.2d at 996. To trigger the *in camera* review, the *Bishop* court said that it is required that the defendant "advance in good faith, at least some factual basis which indicates how the privileged records are likely to be relevant to an issue in the case...." *Id.* 617 N.E.2d at 996–997, quoting *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924, 928 (1979). The court made clear that, rather than identifying privileged material necessary or material to defense, the judge is required "to review and identify only *relevant* materials, a task and term with which every judge is familiar." *Id.* 617 N.E.2d at 997.

which is so foreign to its usual office. *Id.* at 86, 602 A.2d at 1263. At the same time, we sought to ensure that the defendant would have the benefit of the advocate's eye while protecting the victim's privacy. This was to be accomplished "both by virtue of the court order restricting dissemination of the information contained in the records and by proceedings to determine admissibility of information defense counsel deems relevant and usable ..." *Id.* at 87, 602 A.2d at 1263.

I realize that the records in this case are more sensitive than those at issue in *Zaal* and *Stein* and that the trial court has yet to determine the strength of the "need to inspect" showing in relation thereto. When access to sensitive or confidential records is sought by a defendant, the trial court has three options, "to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality." *Id.* at 87, 602 A.2d at 1264. Which option it chooses is a matter within the court's discretion, although we offered factors to inform the exercise of that discretion. *Id.* The burden of proof does not change, merely the method of reviewing the material. It must also be pointed out that, when the court reviews the records alone, except as to information which, without regard to the perspective of the person conducting the review, has absolutely no possible relevance to the case, "the trial court's *in camera* review should not be conducted with preclusive intent." *Id.* at 88, 602 A.2d at 1264 (footnote omitted). To the extent that there is a question of the source of the victim's memory, *i.e.,* how it was "triggered", evidence bearing on that issue would appear to be "readily identifiable," and, hence, would support court review alone.

Should it elect to review the records alone, as, indeed, it may decide to do, the court's purpose is not to act as advocate, but only to exclude from the parties' review material that could not logically be used by the defense in preparing its case. Finally, "[t]he trial judge should mark and seal the records excluded so that the judge's determination in that

regard may be reviewed on appeal." *Id.* at 88 n. 15, 602 A.2d at 1264 n. 15.

## VI.

As earlier indicated, the majority requires a showing of "a reasonable likelihood that the privileged records contain certain exculpatory information necessary for a proper defense," as a prerequisite to disclosure of privileged information. Majority Op. at 133. Not only does this standard place on a defendant a burden of proof much higher than that required in *Zaal*, but, notwithstanding its protestations to the contrary, it makes the psychotherapist-patient privilege effectively absolute; establishing a reasonable likelihood of discovery of exculpatory information, requiring as it does a rather specific identification of what the sought after evidence is, is virtually impossible. See note 4 *supra*. A constitutional right incapable of being exercised is tantamount to no right at all; it is hollow, indeed.

I repeat, I dissent.

ELDRIDGE, J., joins in the views expressed herein.