*State of Maryland v. Jonathan Johnson*, No. 3, September Term 2014, Opinion by Greene, J.

**CRIMINAL LAW – PRIVILEGED COMMUNICATIONS**

A threshold must be crossed before it is appropriate for a trial judge to review a victim's mental health records *in camera*. The defendant must proffer or present sufficient facts to show a reasonable likelihood that the records sought contain exculpatory evidence to warrant an *in camera* review.

IN THE COURT OF APPEALS
OF MARYLAND

No. 3
September Term, 2014

STATE OF MARYLAND

v.

JONATHAN JOHNSON

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Greene, J.

Filed:   October 22, 2014

Respondent, Jonathan Johnson, was convicted of sexual abuse of a minor and second-degree sexual offense. Leading up to trial, Respondent sought, by means of a trial subpoena, access to the minor victim's mental health records. The trial court denied Respondent's request for an *in camera* review of those records, reasoning that his request amounted to a "fishing expedition," and concluding that Respondent did not show a reasonable likelihood that the records contained exculpatory evidence as required by *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866 (1995). In *Goldsmith*, this Court rejected the argument that a criminal defendant has the right to seek a victim's privileged mental health records during pre-trial discovery, but recognized that a criminal "defendant's constitutional rights *at trial* may outweigh the victim's right to assert a privilege." 337 Md. at 129, 651 A.2d at 874 (emphasis added). Thus, we pick up where *Goldsmith* left off; in this case, we consider whether a criminal defendant's constitutional rights at trial may trump a victim's privilege in his or her mental health records, and, further, what standard the defendant's proffer must meet before being entitled to an *in camera* review of the privileged records. We shall hold that a criminal defendant is entitled to an *in camera* review of a victim's mental health records, even though privileged, if the defendant can establish a reasonable likelihood that the privileged records contain exculpatory evidence relevant to the defense.

## FACTUAL AND PROCEDURAL HISTORY

The facts surrounding Respondent's history with the minor victim, J.C.,[1] are set forth

---

[1] For purposes of anonymity, we shall refer to the minor victim by his initials.

in Petitioner's brief, pursuant to the parties' agreed Statement of Facts,[2] as follows:

> Between April 2007 and April 2008, Respondent lived in an apartment in Baltimore City with his girlfriend, who was also the mother of Respondent's infant children, and with J.C. (Respondent's girlfriend's nine/ten year old son), and J.C.'s older sister (Respondent's girlfriend's oldest daughter). Because J.C.'s mother worked, Respondent oftentimes was the only adult home when J.C. returned from school, which was about an hour earlier than his oldest sister.
>
> On one occasion, Respondent entered J.C.'s room after J.C. returned home from school and was changing clothes. Respondent, who was riled up at the time, ordered J.C. to turn over in a mean tone. He then pushed J.C. around onto J.C.'s bed and, after pulling J.C.'s shorts down, Respondent put on a condom and forced his penis "in and out" of J.C.'s "butt." J.C., who cried at the time, threatened to kill Respondent when Respondent finished. J.C. did not tell his mother or another adult because he did not trust a lot of people and did not feel comfortable talking to someone about the assault.
>
> J.C. began to live with his maternal grandfather in March 2009 and ceased all contact with Respondent at that time. While J.C. was living with his grandfather, one evening they dined at a Chinese restaurant. During dinner, J.C. and his grandfather spoke about the trouble that J.C. had been having at school. His grandfather encouraged him to talk about his problems with "somebody," or with his "therapist," or with other "people." After learning from his grandfather that his grandfather had been molested as a child, J.C. reported Respondent's sexual assault to his grandfather. Upon returning home from the restaurant, J.C.'s grandfather called the police.
>
> At trial, Respondent stated that he was never alone with J.C. and denied that he had ever sexually assaulted J.C. According to Respondent, J.C.'s grandfather and Respondent had a sexual encounter about twenty years earlier and then, more recently, introduced Respondent to J.C.'s mother. (Citations to the record omitted.)

---

[2] Maryland Rule 8-501(g) provides that "[t]he parties may agree on a statement of undisputed facts that may be included in a record extract or, if the parties agree, as all or part of the statement of facts in the appellant's brief. . . ."

Based on J.C.'s allegations, Respondent was charged, in the Circuit Court for Baltimore City, with sexual abuse of a minor and other related offenses. According to the record, J.C. became a patient at National Pike Health Center, Inc. ("National Pike"), a full service medical facility with a staff that includes both psychiatrists and licensed clinical social workers. Prior to trial, Respondent filed a subpoena *duces tecum* to require National Pike to produce records pertaining to J.C. National Pike filed a Motion for Protective Order, effectively seeking to quash the subpoena.

On November 9, 2011, the morning of trial, the trial judge held a hearing with regard to National Pike's Motion for Protective Order. National Pike explained that the records sought by Respondent are privileged and confidential because they contain communications by J.C. to mental health providers, and include notes from psychiatrists and a licensed clinical social worker. The trial judge asked defense counsel to explain the reason for requesting the records, to which defense counsel responded:

> DEFENSE COUNSEL: . . . I'd like to see the records, one, to know what is this young man's mental health diagnosis. Is he, is he bipolar? Is he paranoid schizophrenic? Is he delusional? Does he have hallucinations, Your Honor?
>
> THE COURT: And the reason for that?
>
> DEFENSE COUNSEL: Your Honor, if he, if he's delusional, and if [he] has hallucinations, I believe that's, leads to exculpatory, that's exculpatory for Mr. Jonathan Johnson's case. . . .
>
> THE COURT: Well, I assume you're, you're saying you want to see these records generally because these records may disclose information that could affect his credibility or his ability to perceive; is that what you're talking about?

3

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: Okay. So just, just like the – maybe they do. I mean, maybe there's something in there or not. But you don't, you don't know that for a fact, correct?

DEFENSE COUNSEL: Correct, Your Honor.

THE COURT: Any other reasons?

DEFENSE COUNSEL: No, Your Honor. I'm just trying to get an idea of anything exculpatory about this young man, why he's in treatment. If he's in treat – if there's allegations that he's in treatment for disciplinary issues, if he's in treatment for, if he's seeing a counselor because he's a habitual liar.

THE COURT: Okay. Why isn't this just a fishing expedition? I mean, you could say that – I assume, and I'm, and I, I – again, in these cases I'm sympathetic to the defense because in a sense you obviously don't have the records, so you can't tell me what exactly they contain. But I guess part of my concern is just merely a proffer that, in fact, it may affect his credibility or it may [ ] provide you some information you can use for cross-examination. Is there anything more specific beyond that?

DEFENSE COUNSEL: Not without even having a slightest idea of what may be in the records, Your Honor, not without even knowing his diagnosis, no. So, it, it's – if you wish to call it a fishing expedition, it may be because I have no idea what these records may contain.

We have a State's witness who has mental health issues, obviously has mental health issues that may lead to his credibility, may affect his credibility, may affect his ability to perceive, to understand. . . .

Relying on *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866 (1995), and *Fisher v. State*, 128 Md. App. 79, 736 A.2d 1125 (1999), discussed *infra*, the trial court concluded that defense counsel's proffer to the court was insufficient to permit disclosure of the victim's privileged mental health records. Therefore, the trial judge granted National Pike's motion, but ordered

4

that the records sought by defendant be sealed.  On November 14, 2011, after a three day jury trial, Respondent was convicted of sexual abuse of a minor and second-degree sexual offense.  On February 10, 2012, Respondent was sentenced to fifteen years incarceration.

Respondent noted an appeal, arguing that the trial court committed reversible error by granting National Pike's motion.  In an unreported opinion, one judge dissenting,[3] the Court of Special Appeals panel reversed, concluding that "[Respondent] sufficiently established the likelihood that the records sought would provide exculpatory information." Noting the need to "strike a balance between the competing interests of a witness's privilege and a defendant's constitutional rights to obtain and present information necessary to his defense," the court stated further, "[w]hile we cannot expect counsel to have precise information as to the content of the records, he did suggest that it would be appropriate to know of [J.C.'s] propensity for veracity."  In the court's view, "[t]hose suggestions alone were sufficient, at the very least, to call for an *in camera* review of the records to determine their relevance, *vis a vis* [Respondent]'s constitutional rights, before ruling on [National Pike's motion]."  On the State's petition, we granted *certiorari*, 435 Md. 501, 79 A.3d 947 (2013), to answer the following question:

> Is a "suggestion" by the defendant that the victim's mental health records may contain information that is either exculpatory or relating to the victim's

---

[3] The dissenting opinion advocated for an affirmance of Johnson's convictions because, based on our holding in *Goldsmith*, the mere speculation that the records contained evidence relevant to impeachment is not sufficient to allow the defendant access to the records via an *in camera* review.

5

"propensity for veracity" insufficient, under *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866 (1995), to "call for an *in camera* review" of those records?

For the following reasons, we reverse the judgment of the Court of Special Appeals.

## DISCUSSION

Petitioner would have us create a bright line rule and hold that a victim's mental health records are subject to an absolute privilege; therefore, a defendant would not be entitled to the disclosure of such records under any circumstances. At the very least, Petitioner argues, in order to access privileged records the defendant should be required to demonstrate a sufficient factual basis supporting his or her proffer that the records sought likely contain exculpatory information. Specifically, Petitioner asserts that a defendant must satisfy a high threshold test, and present credible evidence that would otherwise be admissible under the Maryland Rules of Evidence.

Respondent argues that a criminal defendant's constitutional rights at trial must trump a victim's privilege in mental health records, and an *in camera* review of the records is an appropriate method to both protect the victim's privacy interest in his or her records and ensure a criminal defendant's constitutional rights and access to exculpatory evidence. Respondent contends that the burden on the defendant to warrant an *in camera* review cannot be as high as Petitioner suggests, however. Instead, Respondent urges this Court to follow the standard set forth by the United States Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), that is, where the defendant cannot possibly know exactly what the records contain, he or she need only "make some plausible showing"

6

that the information in the records would be "both material and favorable to his [or her] defense." *Ritchie*, 480 U.S. at 58 n.15, 107 S. Ct. at 1002 n.15, 94 L. Ed. 2d at 58 n.15 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446, 73 L. Ed. 2d 1193, 1202 (1982)).

In undertaking our review of *Goldsmith* and other relevant precedent, we shall first discuss the threshold question of whether a criminal defendant's trial rights *may* prevail over a victim's right to assert a privilege in his or her mental health records. Because we answer that question in the affirmative, we shall next address *when* a criminal defendant will be entitled to an *in camera* review[4] of the privileged records.

## I. May the defendant's trial rights trump the victim's privilege?

A patient's privilege to preclude the disclosure of his or her communications to a licensed psychiatrist and communications to a licensed clinical social worker, respectively, are governed by Md. Code (1973, 2013 Repl. Vol., 2014 Supp.), §§ 9-109 and 9-121 of the Courts and Judicial Proceedings Article (hereinafter all references to the Maryland Code are to the Courts and Judicial Proceedings Article, unless otherwise noted). Specifically, § 9-109 ("Communications between patient and psychiatrist or psychologist") provides in relevant part:

---

[4] We shall explain, *infra*, that an *in camera* review is the appropriate method to obtain access to a victim's privileged mental health records. To allow a criminal defendant to directly review all of the privileged records, even upon a sufficient showing of need, would provide inadequate protection to the victim/patient's privacy rights to prevent disclosure of mental health records.

(b) Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or the patient's authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing:
(1) Communications relating to diagnosis or treatment of the patient; or
(2) Any information that by its nature would show the existence of a medical record of the diagnosis or treatment.

Similarly, § 9-121 ("Communications between licensed social worker and client") provides in relevant part:

(b) Unless otherwise provided, in all judicial or administrative proceedings, a client has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications made while the client was receiving counseling or any information that by its nature would show that such counseling occurred.

Nothing in the relevant statutes purports to make the privileges absolute. Indeed, the statutes provide for certain exceptions, not relevant here, and, like other evidentiary privileges, the privilege holder may waive the privilege. *See* §§ 9-109(d); 9-121(d) and (e).[5]

In this case, Respondent sought the minor victim's records held by a private counseling center. There is no dispute that the records sought are privileged mental health records[6] and that the victim at no time waived the privilege. As phrased by Petitioner, this case involves a "tug of war" between the right of the victim to assert his or her privilege to

---

[5] For a detailed discussion of the psychotherapist-patient and social worker-client privileges in Maryland, see generally Lynn McLain, Maryland Evidence State and Federal §§ 504, 512 (3d ed. 2013).

[6] Although the records at issue in this case apparently include communications to psychiatrists as well as to clinical social workers, and therefore may be covered by both § 9-109 and § 9-121, for purposes of this opinion, we shall simply refer to the privilege covering these records collectively as the "psychotherapist-patient privilege."

8

prevent disclosure of confidential mental health records and the right of a criminal defendant to present a fair defense at trial. *See* U.S. Const. amend. VI; Md. Decl. of Rts. Art. 21. Specifically, a criminal defendant has a "right to put before a jury evidence that might influence the determination of guilt," or, in other words, a right to obtain and present exculpatory evidence. *Ritchie*, 480 U.S. at 56, 107 S. Ct. at 1000, 94 L. Ed. 2d at 56. In addition, the Sixth Amendment provides the criminal defendant with the right to confront witnesses, which is achieved through cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). We addressed this conflict of rights, albeit in dicta, in *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866 (1995).

### *Goldsmith v. State*

In *Goldsmith*, the defendant was charged with and convicted of sexual child abuse, and other related offenses, of his stepdaughter. 337 Md. at 115, 651 A.2d at 868. During pre-trial discovery, the defendant sought access to the minor victim's psychotherapy records, asserting "(1) that the complainant [had] been in treatment with [her] psychologist[] for over four years, and (2) that a police detective related that it took years of counseling for the complainant to summon the courage to bring these charges against her stepfather." 337 Md. at 116, 651 A.2d at 868. The trial judge denied Goldsmith's motion on the basis of the victim's asserted privilege. 337 Md. at 119, 651 A.2d at 869. Notably, "the motions judge precluded the *pre-trial* discovery review of [the therapist's] records[, but] [t]he defense was not precluded from calling [the therapist] when the case actually went to trial." *Id*. (emphasis

9

in original). The therapist, however, was never called to testify at trial. *Id.*

On appeal, this Court affirmed the denial of pre-trial discovery of the victim's privileged mental health records under Md. Rule 4-264.[7] *Goldsmith*, 337 Md. at 123, 651 A.2d at 871 ("Md. Rule 4-264 means what it says and precludes pre-trial discovery of a victim's privileged psychotherapist-patient records."). Noting that "an accused has limited pre-trial discovery rights," we further held that there is no state or federal constitutional right that "establishes a pre-trial right of a defendant to discovery review of a potential witness's privileged psychotherapy records." *Goldsmith*, 337 Md. at 121, 127, 651 A.2d at 870, 873. In other words, the rule announced in *Goldsmith* is that a criminal defendant is never entitled to pre-trial discovery of a victim's privileged mental health records (absent waiver by the privilege holder). *See id.*; *see also Thomas v. State*, 372 Md. 342, 358-59, 812 A.2d 1050, 1060 (2002) (affirming the trial court's holding that a witness's psychotherapy records "are privileged and therefore not discoverable" where the defendant sought to obtain those records during pre-trial discovery); *Fisher v. State*, 128 Md. App. 79, 126, 736 A.2d 1125, 1150 (1999) ("With respect to a defendant's entitlement to review [privileged psychotherapy records] pretrial, the privilege is an absolute bar and there is no such entitlement under any circumstance[.]").

---

[7] Maryland Rule 4-264 governs pre-trial subpoenas for tangible evidence in criminal cases. As we stated in *Goldsmith*, "[p]re-trial production of 'documents' or 'other tangible things' under Md. Rule 4-264 is discretionary, requiring a motion and a court order. As such, it does not guarantee a criminal defendant the absolute right to subpoena and examine the private records of every private individual or entity that may conceivably possess exculpatory records." 337 Md. at 122, 651 A.2d at 871.

10

The Court's discussion in *Goldsmith* did not end there, however. We distinguished between three scenarios: (1) pre-trial discovery of privileged information; (2) disclosure of merely confidential (rather than privileged) information; and (3) disclosure of privileged information for use at trial. As we have seen, a victim's privilege is an absolute bar to disclosure of privileged mental health records during pre-trial discovery. The other two categories, the Court said, are not barred absolutely, but *may* be available to the criminal defendant, *if* the defendant makes the requisite showing of need.[8]

With regard to the disclosure of privileged information at trial, although the issue was not presented by the facts in *Goldsmith*, we "distinguish[ed] between a defendant's right of access to information during pre-trial discovery as opposed to the defendant's constitutionally based right *at trial* to fairly present a defense" and "recognize[d] that the defendant's constitutional rights at trial may outweigh the victim's right to assert a privilege." 337 Md. at 129, 651 A.2d at 874 (emphasis in original). Without further analysis, we noted that the particular constitutional rights at issue are the rights to confrontation and compulsory process.[9]

---

[8] We discuss in Section II, *infra*, the standard for determining when the defendant has made a sufficient showing of need. As we shall explain, the burden on the defendant is higher for privileged information as compared to merely confidential information.

[9] For a discussion on these and other constitutional rights potentially implicated in this context, as well as a thorough discussion of the conflict between a criminal defendant's trial rights and a victim/witness's right to assert a privilege, see generally Clifford S. Fishman, *Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records*, 86 Or. L. Rev. 1 (2007).

11

In distinguishing a defendant's limited right to pre-trial discovery from the defendant's use of privileged information at trial, we also reasoned that the trial judge would be in a better position to protect the interests of both parties (the defendant and the victim/witness) when evaluating a trial subpoena as opposed to a pre-trial discovery request. "The balancing of the defendant's need for exculpatory information against the need to protect the victim's psychotherapist-patient privilege will be a much more informed decision at trial." *Goldsmith*, 337 Md. at 131, 651 A.2d at 875. Similarly, because at that point the trial judge knows that the case is actually going to trial, "the trial judge will be in a better position to determine what the contested issues are and evaluate the relevancy of the information the defense is seeking." *Goldsmith*, 337 Md. at 131-32, 651 A.2d at 876. We also noted that in contrast to a pre-trial subpoena under Md. Rule 4-264, which is only for documents or other tangible evidence, "a trial subpoena *duces tecum* under Md. Rule 4-265 covers the witness as well as documents or tangible evidence. Therefore, when conducting an *in camera* review . . . , the trial judge may be able to enlist the psychotherapist's assistance in locating relevant portions of the notes, as well as interpreting the notes." *Goldsmith*, 337 Md. at 131, 651 A.2d at 875. Accordingly, we concluded that under some circumstances a criminal defendant's constitutional rights will trump a victim's right to assert a privilege during the defendant's trial. *See Goldsmith*, 337 Md. at 133-34, 651 A.2d at 876-77.

### *Jaffee v. Redmond*

Petitioner contends that *Jaffee* v. *Redmond*, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed.

12

2d 337 (1996), decided one year after *Goldsmith*, casts doubt on this Court's analysis in *Goldsmith*.[10] *Jaffee* involved a civil lawsuit against a police officer by the survivors of a man shot and killed by the police officer. 518 U.S. at 4, 116 S. Ct. at 1925, 135 L. Ed. 2d at 341. Upon learning that the officer had participated in numerous counseling sessions with a licensed clinical social worker, the family members sought access to the social worker's records of those sessions for use in cross-examination. *Jaffee*, 518 U.S. at 5, 116 S. Ct. at 1926, 135 L. Ed. 2d at 342. The police officer and the social worker refused to produce those documents, or answer questions about them in depositions and trial, on the basis that they were protected by a psychotherapist-patient privilege. *Id*. The trial judge rejected the notion that the counseling records were privileged, and therefore instructed the jury that they could "presume that the contents of the notes would have been favorable to [the family members]." *Jaffee*, 518 U.S. at 5-6, 116 S. Ct. at 1926, 135 L. Ed. 2d at 342. The United States Court of Appeals for the Seventh Circuit reversed, holding that a psychotherapist-patient privilege protected the confidential communications between the police officer and the social worker, unless, in the interests of justice, the need for disclosure "outweighs that patient's privacy interests." *Jaffee*, 518 U.S. at 6-7, 116 S. Ct. at 1926, 135 L. Ed. 2d at 342-43.

The United States Supreme Court affirmed, recognizing for the first time a

---

[10] We note that, to date, the Supreme Court has not considered the precise issue of this case, *i.e.*, whether a *criminal* defendant's *constitutional* rights can outweigh a victim's right to assert a privilege.

13

"psychotherapist-patient privilege" that extends to a patient's confidential communications made to both licensed psychiatrists/psychologists and licensed social workers "in the course of psychotherapy." *Jaffee*, 518 U.S. at 15, 116 S. Ct. at 1931, 135 L. Ed. 2d at 348.[11]  The Supreme Court rejected, however, the application of a balancing test, which, as proposed by the Seventh Circuit, would weigh the need for the evidence against the protection of the privilege. *Jaffee*, 518 U.S. at 17-18, 116 S. Ct. at 1932, 135 L. Ed. 2d at 349-50 ("Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.").  Thus, explaining and relying on the societal benefits of the privilege,[12] the Supreme Court held that the psychotherapist-patient privilege

---

[11] In determining whether to recognize a psychotherapist-patient privilege under the federal rules of evidence, the question before the Supreme Court in *Jaffee* was "whether a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence[.]'" The Supreme Court concluded that "[b]oth 'reason and experience' persuade us that it does." 518 U.S. at 9-10, 116 S. Ct. at 1928, 135 L. Ed. 2d at 344 (citations omitted).

[12] The Supreme Court explained that:

Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.' *Ibid.* Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment

(continued...)

14

was an absolute bar to disclosure in that case. *Jaffee*, 518 U.S. at 17, 116 S. Ct. at 1932, 135 L. Ed. 2d at 349. Importantly, however, the majority opinion noted in closing that "we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee*, 518 U.S. at 18 n.19, 116 S. Ct. at 1932 n.19, 135 L. Ed. 2d at 349 n.19.

We disagree with Petitioner that *Jaffee* is inconsistent with *Goldsmith*. First, *Jaffee* is a civil case; the Supreme Court was not faced with the significant constitutional rights at play in a criminal trial.[13] Second, we find Footnote 19 instructive, as it specifically leaves the door open for situations where the privilege could yield to some greater interest. In arguing that *Jaffee* is inconsistent with *Goldsmith*, Petitioner asserts that "[n]otably, the [Supreme] Court did not include the circumstance present here—it did not suggest that a criminal defendant's constitutional rights of confrontation or compulsory process would merit abrogation of the privilege." The exclusion of this situation in the Court's analysis

---

(...continued)
> or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

518 U.S. at 10, 116 S. Ct. at 1928, 135 L. Ed. 2d at 344-45 (footnote omitted). As we shall explain, we do not disagree with this explanation of the societal benefits of the psychotherapist-patient privilege.

[13] Indeed, since *Jaffee* several federal district courts have reached this very conclusion. *See, e.g., Bassine v. Hill*, 450 F. Supp. 2d 1182, 1185 (D. Or. 2006) (distinguishing *Jaffee* as "a civil case with no confrontation clause or due process considerations implicated").

15

does not suggest that the Supreme Court meant to foreclose that possibility (or any other possible scenario where a privilege might yield to some greater interest). Certainly, the issue of a criminal defendant's constitutional rights was not relevant to or at issue in that civil case and, therefore, the Supreme Court had no occasion to consider it. For the same reason, we also conclude that the fact that the Supreme Court rejected the use of a balancing test *in the context of that case* does not mean that a balancing test may never be appropriate. Moreover, the Supreme Court made it very clear that "[a] rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner." *Jaffee*, 518 U.S. at 18, 116 S. Ct. at 1932, 135 L. Ed. 2d at 349. The *Jaffee* majority further explained, "[b]ecause this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'" *Id.* (citation omitted).

Although in the dissenting opinion Justice Scalia cautioned that "[f]or the rule proposed [by the *Jaffee* majority], the victim is more likely to be some individual who is prevented from proving a valid claim–or (worse still) prevented from establishing a valid defense[,]" *Jaffee*, 518 U.S. at 19, 116 S. Ct. at 1932-33, 135 L. Ed. 2d at 350 (Scalia, J., dissenting), it appears that the lower federal courts are split as to whether a criminal defendant's right to present a "valid defense" under the Sixth Amendment will trump the psychotherapist-patient privilege. *See, e.g., United States v. Shrader*, 716 F. Supp. 2d 464,

16

471-72 (S.D. W. Va. 2010) (noting that "[s]ince *Jaffee,* courts have differed on whether the Sixth Amendment can trump the psychotherapist-patient privilege" but "find[ing] that the psychotherapist-patient privilege is not subordinate to the Sixth Amendment rights of [d]efendant" in that case); *United States v. Mazzola*, 217 F.R.D. 84, 88 (D. Mass. 2003) ("Unlike the circumstance at issue in *Jaffee*, this case is a criminal prosecution involving the medical records of a key government witness. The evidentiary benefit of allowing access to such medical records to defense counsel in order to effectively prepare and cross examine [the witness] is great."); *United States v. Hansen*, 955 F. Supp. 1225, 1226 (D. Mont. 1997) (holding that in the context of a criminal case, the defendant's demonstrated need for the records outweighed the witness's privilege, and noting that this was "consistent with the *Jaffee* Court's intent that the precise contours of the privilege be developed in specific cases").

Moreover, the Supreme Court's holding in *Jaffee* established a testimonial privilege under the federal rules of evidence based on "reason and experience." *Jaffee*, 518 U.S. at 10, 116 S. Ct. at 1928, 135 L. Ed. 2d at 344. By contrast, as the Supreme Court noted, all of our sister states have codified "some form of psychotherapist privilege" by statute. *Jaffee*, 518 U.S. at 12, 116 S. Ct. at 1929, 135 L. Ed. 2d at 346. Of those that have reached the issue, the majority of state courts (and at least one legislature)[14] agree that a victim's privilege may be

_____

[14] *See State v. Neiderbach*, 837 N.W.2d 180, 194 (Iowa 2013) (discussing Iowa Code Ann. § 622.10, amended in 2011, providing for an *in camera* review of privileged information in a criminal trial "[u]pon a showing of a reasonable probability that the
(continued...)

17

subordinate to a criminal defendant's constitutional rights at trial.[15]  *See State v. Slimskey*,

779 A.2d 723 (Conn. 2001); *Burns v. State*, 968 A.2d 1012 (Del. 2009); *State v. Peseti*, 65

P.3d 119 (Hawai'i 2003); *State v. Neiderbach*, 837 N.W.2d 180 (Iowa 2013); *Com. v. Dwyer*,

448 Mass. 122 (2006); *Com. v. Barroso*, 122 S.W.3d 554 (Ky. 2003); *People v. Stanaway*,

521 N.W.2d 557 (Mich. 1994); *State v. Hummel*, 483 N.W.2d 68 (Minn. 1992); *State v. King*,

34 A.3d 655 (N.H. 2011); *State v. L.J.P.*, 637 A.2d 532 (N.J. Super. Ct. App. Div. 1994);

*State v. Blake*, 63 P.3d 56 (Utah 2002); *State v. Green*, 646 N.W.2d 298 (Wisc. 2002).  *But

see People v. Turner*, 109 P.3d 639 (Colo. 2005); *State v. Famiglietti*, 817 So.2d 901 (Fla.

App. 2002); *In re Subpoena to Crisis Connection, Inc.*, 949 N.E.2d 789 (Ind. 2011); *Com.

v. Wilson*, 602 A.2d 1290 (Pa. 1992).

Although we disagree with Petitioner that *Jaffee* obligates this Court to hold that the

psychotherapist-patient privilege is an absolute bar to disclosure, we certainly do not disagree

with the Supreme Court's evaluation of the societal value of the psychotherapist-patient

privilege.  *See Jaffee*, 518 U.S. at 10-11, 116 S. Ct. at 1928-29, 135 L. Ed. 2d at 344-45

(...continued)
privileged records sought may likely contain exculpatory information that is not available
from any other source").

[15] We do not suggest that all states approach this conflict of rights the same way.  As
we noted in *Goldsmith*, some states require the privilege holder to waive the privilege once
the defendant makes the requisite showing; if he or she fails to waive the privilege for the
purpose of conducting an *in camera* review, then the witness's testimony is stricken at trial.
*See Goldsmith*, 337 Md. at 134 n.9, 651 A.2d at 877 n.9 (citing cases in Connecticut,
Nebraska, and Michigan).  In addition, some states also allow for pre-trial discovery of the
privileged records once a criminal defendant has made the requisite preliminary showing of
need.  *See, e.g., Com. v. Barroso*, 122 S.W.3d 554, 561-62 (Ky. 2003).

("The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."). Indeed, it is because of the importance of the privilege that we iterated a balancing test in *Goldsmith*, and held that defendant must meet a heavy burden to access privileged information, which we discuss next. Accordingly, we hold that a victim's right to assert a privilege in his or her mental health records *may* yield to the criminal defendant's constitutional rights at trial.

## II. When is the defendant entitled to a review of the privileged records?

Just as the victim does not have an absolute privilege against disclosure of psychotherapy records, nor does a defendant have an absolute right to obtain those records for use at trial. Our stated purpose in *Goldsmith* was "to strike a balance between the competing interests of a witness's privilege and a defendant's federal and state constitutional rights to obtain and present evidence necessary to the defense." 337 Md. at 121, 651 A.2d at 870. To achieve this goal, we held that a defendant must meet a minimum threshold to be entitled to an *in camera* review of the evidence. *See Goldsmith*, 337 Md. at 132, 651 A.2d at 876. We reiterate that a balancing test followed by an *in camera* review is the appropriate method to protect both the defendant's constitutional rights and the victim's privacy rights in his or her mental health records.

## Preliminary Showing ("Proffer")

Before a victim's privilege will bend to the defendant's need, a defendant must make a preliminary showing, which in turn must meet the threshold established in *Goldsmith*. If the defendant is able to make a sufficient proffer, then the trial judge is required to conduct an *in camera* review of the privileged records to determine whether the records actually contain exculpatory material.

As previously discussed, the *Goldsmith* court outlined three scenarios: (1) pre-trial discovery of privileged information; (2) pre-trial discovery of merely confidential (rather than privileged) information; and (3) disclosure of privileged information at trial. *Goldsmith* dealt conclusively with the first scenario–holding that a victim's privilege in psychotherapy records is an absolute bar to a criminal defendant's pre-trial discovery request for those documents. With regard to the other two scenarios, *Goldsmith* set out a standard for obtaining review of the requested information. Although the information sought in this case was privileged, we point out for purposes of clarity that to obtain access to *confidential* information, not subject to a statutory or common law privilege, *Goldsmith* provides that a defendant must "show a likelihood of obtaining relevant information." 337 Md. at 128, 651 A.2d at 874. This test has its genesis in *Zaal v. State*, 326 Md. 54, 602 A.2d 1247 (1992), which dealt with a criminal defendant's subpoena to obtain a minor victim's educational records (which are confidential but not privileged).

With regard to the disclosure of *privileged* records at trial, however, the *Goldsmith*

20

court stated in no uncertain terms that "in order to abrogate a privilege such as to require disclosure at trial of privileged records, a defendant must establish a reasonable likelihood that the privileged records contain exculpatory information necessary for a proper defense." 337 Md. at 133-34, 651 A.2d at 877 (footnote omitted). Moreover, "the required showing must be more than the fact that the records 'may contain evidence useful for impeachment on cross-examination.'" *Goldsmith*, 337 Md. at 133, 651 A.2d at 876 (citing *People v. Stanaway*, 521 N.W.2d 557, 576 (Mich. 1994)). At the hearing on Goldsmith's request for the privileged mental health records, defense counsel proffered that "[w]here the facts are that you have an adult bringing charges that go back over ten years . . . there [was] a question about the complainant's emotional state, and I think that's tied into the credibility. I mean, I simply don't know what her emotional state is." *Goldsmith*, 337 Md. at 118, 651 A.2d at 869. That proffer, which we dubbed a "speculative assertion that the records might be relevant for impeachment[,]" did not cut it. *Goldsmith*, 337 Md. at 135, 651 A.2d at 877.

The Court of Special Appeals addressed this issue in a subsequent case, *Fisher v. State*, 128 Md. App. 79, 736 A.2d 1125 (1999). In *Fisher*, three defendants were convicted of second-degree murder, child abuse, and conspiracy to commit child abuse related to defendants' treatment of two minor children, one of whom had died as a result of abuse and neglect. 128 Md. App. at 87-88, 736 A.2d at 1129-30. Leading up to trial, the defendants sought access to the psychotherapy records of the still living child, which the trial court denied. *Fisher*, 128 Md. App. at 114-17, 736 A.2d at 1148-50. On appeal, the Court of

21

Special Appeals affirmed, concluding that defense counsel's proffer, namely the assertion

that "[w]e have no way of knowing, without having access to those records, whether there

is exculpatory material or not," "does not do it." *Fisher*, 128 Md. App. at 128, 736 A.2d at

1151. Relying on this Court's opinion in *Goldsmith* and its own earlier opinion in *Reynolds*

*v. State*, 98 Md. App. 348, 633 A.2d 455 (1993), the intermediate appellate court explained,

"there is a threshold that must be crossed before it is even appropriate for the trial judge to

review such records *in camera*[,] . . . [and] it is the defendant who bears that burden of

showing the necessity for a review. . . .  Absent such a showing, not even the judge himself

should review the privileged material[.]" *Fisher*, 128 Md. App. at 124-25, 736 A.2d at 1149

(citations and quotations to *Reynolds* omitted).

In *Reynolds*, which was decided prior to *Goldsmith*, the Court of Special Appeals

considered precisely when a trial judge should conduct an *in camera* review of privileged

records.[16]  There, the court stated "[t]he trial judge . . . should not make an *in camera* review

of each and every document that contains privileged information.  The patient's claim of

privilege shall be honored unless the need for inspection has been established." *Reynolds*,

98 Md. App. at 369, 633 A.2d at 464.  To show the "need for inspection" (*i.e.*, to cross the

---

[16] In that case, the defendant was charged and convicted of sexual abuse of his minor daughter.  The defendant made a pretrial request to review the daughter's mental health records, which the trial judge denied.  *Reynolds*, 98 Md. App. at 361, 633 A.2d at 461. Although the appellate court reversed and remanded the case for a new trial on a separate issue, the court offered guidance to the parties and the trial court should the privileged mental health records issue arise during the new trial.  *Reynolds*, 98 Md. App. at 364, 633 A.2d at 461.

threshold), the intermediate appellate court continued, "[t]he burden is on the defendant to persuade the trial judge that there is a substantial possibility that . . . although privileged, the records contain information that might influence the determination of guilt." *Id.* We note that the Court of Special Appeals in *Fisher* cited both the *Reynolds* iteration of the threshold as well as the standard we enunciated in *Goldsmith*, holding that defense counsel's proffer failed either way. *See Fisher*, 128 Md. App. at 128, 736 A.2d at 1151. Although a reasonable mind would conclude that "information that might influence the determination of guilt" (*Reynolds*) is practically equivalent to "exculpatory information necessary for a proper defense" (*Goldsmith*), we take this opportunity to clarify that Maryland courts should utilize the *Goldsmith* standard in analyzing a defendant's proffer for access to privileged mental health records.[17]

---

[17] For a list of the various standards used by our sister states, see Fishman, *supra* note 9, at 39-41, stating:

> [C]ourts have used a variety of terms to articulate the appropriate standard. These formulations vary in what the defendant must seek to show, and how persuasively the defendant must show it, in order to trigger the in camera review by the court.

> How is one to rank, in difficulty of proof, "a reasonable ground to believe," "a reasonable probability," "a reasonable belief," "a reasonable likelihood," "a good-faith belief, grounded on some demonstrable fact," and "reasonable certainty"? How is one to compare "would likely impair his right to impeach the witness," "material information necessary to [the] defense," "information . . . relevant and material to the issue before the court," "evidence favorable to the accused and material to guilt or punishment, including impeachment evidence," "exculpatory information necessary for a proper defense," "exculpatory evidence which is relevant and material to the issue of the
> (continued...)

In neither *Goldsmith* nor *Fisher* did the defendant present a sufficient proffer. In *Goldsmith*, defense counsel asserted that "there [was] a question about the complainant's emotional state, and I think that's tied into the credibility. I mean, I simply don't know what her emotional state is." *Goldsmith*, 337 Md. at 118, 651 A.2d at 869. Similarly, in *Fisher*, defense counsel stated "[w]e have no way of knowing, without having access to those records, whether there is exculpatory material or not." *Fisher*, 128 Md. App. at 128, 736 A.2d at 1151. In the words of the Court of Special Appeals, these proffers "do[] not do it." *Id.*

In the instant case, defense counsel proffered that: "I'd like to see the records, one, to know what is this young man's mental health diagnosis. Is he, is he bipolar? Is he paranoid schizophrenic? Is he delusional? Does he have hallucinations . . . . if he's delusional, and if [he] has hallucinations, I believe . . . that's exculpatory for [Respondent's] case." The trial judge concluded that this "fishing expedition"[18] was not enough to pierce the victim's privilege. In reversing, the Court of Special Appeals held that the suggestion regarding the apparent need to know the victim's propensity for veracity was enough to at

(...continued)
> defendant's guilt," i.e., "material information necessary to the defense," "exculpatory evidence . . . which would be favorable to [the] defense" (is there any other kind of "exculpatory evidence"?), and "necessary to a determination of guilt or innocence"? (Footnotes omitted.)

[18] Defense counsel even conceded that this was a fishing expedition, stating to the trial judge: "if you wish to call it a fishing expedition, it may be because I have no idea what these records may contain."

least warrant an *in camera* review.

We disagree. A "fishing expedition," without more, does not satisfy the *Goldsmith* standard. The mere generalized suggestion "that it would be appropriate to know of [J.C.'s] propensity for veracity" is not enough to overcome the victim's privilege in his mental health records. As stated in *Goldsmith*, a "speculative assertion that the records might be relevant for impeachment" will not cut it. 337 Md. at 135, 651 A.2d at 877. Moreover, under the intermediate appellate court's rationale in this case, it is arguable that *any* defendant would be able to pierce the victim's privilege, because it would always be "appropriate to know [the victim's] propensity for veracity." We stated as much in *Goldsmith*: "We cannot permit a privilege to be abrogated even at the trial stage by the mere assertion that privileged records *may* contain information relevant to credibility. To do so would virtually destroy the psychotherapist-patient privilege of crime victims." 337 Md. at 133, 651 A.2d at 876 (emphasis in original).

We recognize how unlikely it may be that a defendant or defense counsel will *know* in advance what information is in a patient's privileged mental health or psychotherapy records. Nonetheless, in order to gain access to any information in those records, the defendant may (and must) be able to point to *some fact* outside those records that makes it *reasonably likely* that the records contain exculpatory information.[19] We look to our sister

---

[19] Petitioner urges this Court to require a more formal hearing, including the application of the Rules of Evidence, where the defendant must present "credible evidence" to show a likelihood that the records sought contain exculpatory evidence. We decline the
(continued...)

25

states for examples of facts that could[20] reveal a likelihood that the privileged records contain exculpatory evidence. One such example is evidence of prior inconsistent statements. In *State v. Peseti*, the victim's sister testified that the victim had on one occasion "admitted that the incident 'didn't happen.'" 65 P.3d 119, 129. Similarly, in *Brooks v. State*, 33 So. 3d 1262, 1269 (Ala. Crim. App. 2007), other records produced by the State during discovery included an inconsistent statement by the victim. Another example is strange behavior by the victim surrounding the counseling sessions, such as *Burns v. State*, 968 A.2d 1012 (Del. 2009), where the victim destroyed notes about alleged abuses after an interview with her psychiatrist. *People v. Stanaway*, 521 N.W.2d 557 (Mich. 1994), a case cited by this Court in *Goldsmith*, also provides a useful example of a defendant pointing to actual facts to support a proffer that the mental health records likely contained exculpatory evidence. In that case, the defense's theory was "that the claimant is a troubled, maladjusted child whose past trauma has caused her to make a false accusation." In support of a request to review the claimant's mental health records, the defendant pointed to prior abuse of claimant by her biological father and factual support for sexually aggressive behavior by the victim.

_____

(...continued)
invitation. In our view, the *Goldsmith* standard is enough to protect the victim's privacy interests and right to assert a privilege, and creates a sufficient burden on defendant, such that we see no reason to require the defendant's proffer to adhere to the Rules of Evidence.

[20] We purposefully use the conditional here because the nature of this situation necessarily requires a fact-specific inquiry. For that reason, moreover, the evaluation of the sufficiency of a defendant's proffer is a matter left, in the first instance, to the sound discretion of the trial judge.

26

Although the trial court denied the defendant's request, the Supreme Court of Michigan held, based on defendant's proffer, that *in camera* review "may have been proper" and remanded for further proceedings, including to further develop the record. 521 N.W.2d at 576-77.

Respondent in this case offered no such factual predicate to show a likelihood that the victim's psychotherapy records contained exculpatory information. On the contrary, defense counsel merely proffered that "if he's delusional, and if [he] has hallucinations, I believe . . . that's exculpatory for [Respondent's] case." In effect, all defense counsel proposed were hypotheticals–in other words, too many "if's." The Court of Special Appeals concluded that the "suggest[ion] that it would be appropriate to know of [J.C.'s] propensity for veracity. . . . [was] sufficient, at the very least, to call for an *in camera* review of the records to determine their relevance, *vis a vis* [Respondent's] constitutional rights, before ruling on [National Pike's motion]." Although we do not disagree that it would be "appropriate to know of [J.C.'s] propensity for veracity," that alone is not enough to outweigh a victim's right to assert the privilege in the victim's mental health records. *See Goldsmith*, 337 Md. at 128 n.5, 651 A.2d at 874 n.5 ("Merely stating '*suppose*' the victim did this or said that is not a proffer sufficient to establish a need for the records."). As we have repeated, we must weigh the defendant's need for the evidence with the victim's privacy right in privileged records.[21] Based on this record, Respondent's proffer did not meet the required threshold and

---

[21] We cannot emphasize enough that this determination must be made on a case-by-case basis. Moreover, there may be other factors that are appropriate for the trial judge to consider, such as whether the requested information is available from another source.

he is therefore not entitled to review J.C.'s counseling records for evidence regarding J.C.'s propensity for veracity. Accordingly, the Court of Special Appeals's conclusion was in error and there was no abuse of discretion on the part of the trial judge in refusing to conduct an *in camera* review of the records.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**